**In re BURLINGTON NORTHERN, INC., EMPLOYMENT PRACTICES LITIGATION.**

**Appeal of DAVIS, BARNHILL & GALLAND, P.C., Freeman, Freeman & Salzman, P.C., and William E. McBride, et al.**

**No. 86–1916.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1987.

Decided Oct. 28, 1987.

Lee A. Freeman, Jr., Freeman, Freeman & Salzman, P.C., Chicago, Ill., for appellant.

Christopher T. Lutz, Steptoe & Johnson, Washington, D.C., for appellee.

Before BAUER, Chief Judge, and WOOD, Circuit Judge, and GRANT, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal and another related appeal we decide today[1] arise from a massive Title VII race discrimination class action filed against the Burlington Northern railroad in the late 1970s. The case finally seems to be winding to a close with these appeals seeking a second round of attorneys' fees and costs.[2] This appeal principally raises the question of whether the lodestar reduction principles described in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), apply to attorneys' fees sought for litigating an attorneys' fees award. The district court held that they do. We affirm.

## I. BACKGROUND

In the late 1970s a series of race discrimination actions was filed under Title VII against Burlington Northern. One of these actions, *McBride v. Burlington*

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. *In re Burlington Northern, Inc.*, 832 F.2d 422 (7th Cir.1987).

2. This appeal presents the claims for fees of plaintiffs' lead counsel, while the other appeal we decide today presents the claims for fees of other counsel for plaintiffs. The district court for both sets of counsel awarded substantial attorneys' fees in the first round, but not the amounts sought in the second round.

*Northern,* No. 78 C 269 (N.D.Ill.), was certified in 1978 as a class action. The following year many similar cases pending in other federal districts, including an intervening action by the Equal Employment Opportunity Commission, were consolidated with the class action; the result was essentially a single surviving case against Burlington Northern, although several plaintiffs retained individual status and did not become a part of the class. The district court appointed two attorneys as lead counsel for the class,[3] leaving class members free to seek concurrent representation by their own attorneys.

After years of discovery and other trial preparation the class action settled in November 1983 just hours before trial was to begin. The settlement was subsequently embodied in a consent decree approved by the district court. Pursuant to the consent decree Burlington Northern deposited $10 million into bank accounts held in the district court's name for eventual allocation to plaintiffs. Burlington Northern, its liability established, had no further interest in the settlement fund or its distribution. At this point the case moved into two new phases that progressed simultaneously. One phase was the allocation among plaintiffs of the $10 million settlement fund. Lead counsel, subject to district court approval, were charged with administering and allocating the fund. The other phase was the payment of reasonable attorneys' fees to plaintiffs' counsel by Burlington Northern.

The district court required plaintiffs' counsel to file petitions for attorneys' fees in the months following the approval of the consent decree, which by its terms provided

for the award of such fees. Both lead counsel and other counsel for plaintiffs filed petitions for attorneys' fees. With the exception of lead counsel, Burlington Northern was able to reach settlements with all of plaintiffs' counsel on their claims for attorneys' fees. In October and November 1984 the district court entered orders approving the settlements for attorneys' fees with those counsel.[4] For lead counsel, however, the district court was required to hold three days of hearings to review the disputed claims for attorneys' fees. The dispute focused on two aspects of lead counsels' claim for attorneys' fees: a basic lodestar amount and an appropriate multiplier. The district court, however, declined to apply a multiplier, but awarded a lodestar of nearly $2.2 million in fees and costs to lead counsel. *See EEOC v. Burlington Northern, Inc.,* 618 F.Supp. 1046 (N.D.Ill.1985), *aff'd in part and rev'd in part sub nom. In re Burlington Northern, Inc.,* 810 F.2d 601 (7th Cir.1986).

Lead counsel then filed second petitions for attorneys' fees and costs for the time and money spent in seeking fees through the first petition. In May 1986 the district court awarded attorneys' fees and costs a second time to lead counsel for seeking fees initially, but the court awarded less than lead counsel sought because lead counsels' success in litigating the initial fee award had been limited. Lead counsel appeal that second award of fees.[5]

## II. DISCUSSION

■ This appeal raises the question of whether the principles for recovering attorney's fees laid out in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40

3.  Lead counsel were Paul C. Sprenger of Sprenger, Olson & Shutes (Minneapolis, Minnesota), and Charles Barnhill, Jr., of Davis, Miner, Barnhill & Galland P.C. (now Davis, Barnhill & Galland P.C.) (Chicago, Illinois).

4.  Attorneys' fees claimed in connection with time spent in the allocation of the $10 million settlement fund are at the heart of the other appeal we decide today.

5.  This case resembles what we described in another second round attorneys' fees case as a "nest of Chinese boxes." *Muscare v. Quinn,* 680

F.2d 42, 44 (7th Cir.1982). In *Muscare* we explained:

> The outside box is the litigation of the civil rights issue itself. Within it is the litigation over the fees incurred in the litigation over the merits—ordinarily a lesser litigation, as our metaphor implies.... Within the initial fee litigation will be another litigation—usually a smaller one ...—over the attorneys' fees incurred by the plaintiff in the initial fee litigation. And so on without necessary end.
>
> *Id.*

(1983), apply to fees recoverable for litigating fee awards. Deciding whether or not the principles of a particular case apply to a specific set of facts is something a district court does as a matter of law. We review a district court's legal determinations de novo. *United States v. Montoya*, 827 F.2d 143, 146 (7th Cir.1987); *Gianukos v. Loeb Rhoades & Co.*, 822 F.2d 648, 652 (7th Cir.1987).

■ A subsidiary question raised in this appeal is, if *Hensley* does apply, whether the district court properly determined that a fee reduction was justified and whether the amount of the reduction was appropriate. On appeal, "we are loath to disturb a ruling by a district judge on a request for second-round attorneys' fees," and because such a ruling is within the district court's broad discretion, we will do so only in "extraordinary circumstances." *Muscare v. Quinn*, 680 F.2d 42, 44, 45 (7th Cir.1982). In other words, our standard of review for reviewing fee awards is abuse of discretion. *Berberena v. Coler*, 753 F.2d 629, 632 (7th Cir.1985); *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984) ("[A]n abuse of discretion occurs only when no reasonable person could take the view adopted by the trial court.").

■ Awards of attorneys' fees in federal court are governed by the American Rule, which posits that absent statutory authorization, contractual agreement, or exceptional circumstances, parties bear their own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Lowe v. Letsinger*, 772 F.2d 308, 315 (7th Cir.1985). When a statute does authorize fee shifting, the court may award fees to the winning party in accordance with the statute. Under the fee-shifting provision of Title VII applicable in this case,[6] the district court awarded attorneys' fees to lead counsel as prevailing parties in the litigation over the initial claim for fees. Lead counsel sought an award of a full lodestar,[7] but the district court awarded a reduced amount because, based on the principles set out in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), lead counsel had achieved limited success in their initial claim for fees.

*Hensley* deals in part with lodestar adjustment. The Supreme Court explained in *Hensley* that, as to lodestar adjustment, "[t]he standards set forth in this opinion are generally *applicable in all cases* in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7 (emphasis added). Other courts have held that the *Hensley* standards for lodestar adjustment specifically apply to fee awards for litigating fee awards.[8]

But in spite of this, lead counsel argue that *Hensley* does not apply to their fee award for seeking attorneys' fees. They argue that "in the absence of abuse by the petitioners, district courts should award a reasonable hourly fee for all hours reasonably spent to present the fee petition without regard to how much petitioners 'prevailed' in the fee proceedings." As support for this argument, lead counsel rely mainly on our decision in *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982).

In *Muscare* plaintiff's lawyer sought $41,000 in fees for successfully suing on

6. We rely on cases that apply the fee-shifting provision of section 1988, in addition to those that apply Title VII's fee-shifting provision, because "[t]he standards for awarding fees under the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988, are the same in a Title VII action." *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 n. 2 (7th Cir.1986); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983).

7. In attorney's fees cases the term lodestar refers to an amount of attorney's fees that is the "product of reasonable hours times a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434,

103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The lodestar is generally presumed to be a reasonable attorney's fee under Title VII. *See Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Berberena v. Coler*, 753 F.2d 629, 632 (7th Cir.1985).

8. *E.g., Durett v. Cohen*, 790 F.2d 360, 363 (3d Cir.1986); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 924 (3d Cir. 1985); *cf. Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir.1986) (implicitly holding *Hensley*'s adjustment analysis would be proper in fees cases even though *Hensley* was not applied in case before court).

some of plaintiff's civil rights claims. Although the district court awarded the reduced sum of $25,000, defendant appealed. We held plaintiff was entitled to only a portion of the fees he sought and remanded. On remand the district court awarded only $8,000 in fees. Plaintiff did not contest the award, but sought $10,000 for litigating the fees claim. The district court awarded nothing on the lawyer's claim for second round attorney's fees and we affirmed on appeal. We held that the question of the amount of fees to be awarded to a prevailing party is determined by the "reasonableness" of the award "in light of all the circumstances of the case." *Id.* at 44. The circumstances of that case were that plaintiff had achieved only limited success in his battle for fees ($41,000 sought versus only $8,000 awarded) and consequently his award for litigating the initial fees award could be reduced accordingly—even to zero.

We cannot see how our holding in *Muscare* prevents the application of *Hensley*'s principles to the fee award in this case. *Hensley*, decided almost a year after *Muscare*, holds that a fees award may be reduced to make it "reasonable in relation to the success achieved." 461 U.S. at 436, 103 S.Ct. at 1941. *Muscare*, by comparison, holds that a fees award for fees litigation can be reduced, even to nothing, so that the award is "reasonable" when considered "in light of all the circumstances of the case." 680 F.2d at 44. We believe that our analysis in *Muscare* does not conflict with the

analysis in *Hensley*, but rather comports with it.[9] Both cases analyze the reasonableness of a proposed fee award by looking to the particular circumstances of the case, *i.e.*, plaintiff's relative success or lack thereof. Consequently we hold that *Hensley* by its own terms applies to a fees award for seeking fees and that nothing in our holding in *Muscare* detracts from *Hensley*'s application.[10]

■ Lead counsel argue, however, that even if *Hensley* does apply in this case, the district court abused its discretion in using *Hensley*'s principles to reduce lead counsels' lodestar. *Hensley* describes two situations in which lodestar reduction is allowed. Lead counsel contend neither situation is present here.

The first situation described in *Hensley* is "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims...." 461 U.S. at 440, 103 S.Ct. at 1943. Lead counsel argue that their claims for the lodestar amount and a multiplier are interrelated and not "distinct in all respects." The district court agreed with that contention and did not analyze lead counsels' fee petition under the first part of the *Hensley* test.

The district court did, however, analyze lead counsels' fee award under the second situation described by the *Hensley* test that applies where "a plaintiff has achieved only partial or limited success," even where "the plaintiff's claims were interrelated,

---

9. Lead counsel contend that their relative degree of success in litigating for fees should have no bearing on the size of their second fees award. We rejected a similar argument in *Muscare* when plaintiff's lawyer in that case had contended that

> even if he had in the end been awarded an attorney's fee of $1, he would be the prevailing party in the fees litigation and would therefore be entitled ... to the $10,000 in time spent to get that $1.

*Muscare v. Quinn*, 680 F.2d 42, 44 (7th Cir. 1982).

10. We agree with the district court's conclusion that *Hensley*'s principles apply in this case:

> Any other result would be illogical; to allow a fee petition, which considers the degree of success on the merits, and then reimburse the

petitioning party without regard to the extent of success on that original petition for fees, is contrary to the spirit of the Fees Act. In this regard, "inability to apply Hensley would deprive the district court of the means to deal with unmeritorious counsel fee claims."

*EEOC v. Burlington Northern Inc.*, No. 78 C 269 (MDL 374) at 9 (N.D.Ill. May 15, 1986) [Available on WESTLAW, DCT database] (citation omitted) (quoting *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 924 n. 42 (3d Cir.1985)). In short, applying *Hensley* will ensure that fee requests are realistically related to the relative success achieved in the litigation on the merits, and not so skewed that they give rise to an undesirable "second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

nonfrivolous, and raised in good faith." 461 U.S. at 436, 103 S.Ct. at 1941. We have explained previously that fee awards falling within *Hensley's* second situation should be analyzed by the district court in three steps: first, "the district court should assess the results obtained by the litigation"; second, "the district court should next measure the extent of plaintiffs' success by comparing the results obtained from the lawsuit with the relief plaintiffs' sought"; and finally, "the district court is to structure an award that is reasonable in light of the plaintiffs' success." *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564, 568, 569 (7th Cir.1983).

Lead counsel correctly assess the results obtained by the initial fees litigation: "Here petitioners obtained a judgment of over two millions [sic] dollars in fees and sought less than 12.5% of that figure for fees and expenses in the fee proceedings." With respect to that recovery of $2.2 million the district court conceded: "This figure appears to represent significant success."

But success in this fees litigation is relative: the second step of the analysis requires that lead counsels' $2.2 million award be considered in light of what lead counsel sought and what lead counsel actually obtained. The fees litigation focused on two items: an appropriate lodestar and the application of a multiplier. The district court awarded the lodestar sought by lead counsel. But in addition to the lodestar amount, lead counsel sought the application of a multiplier of 2.5.[11] Lead counsel sought, therefore, not just the $2.2 million they were awarded, but rather $5.1 million.[12] The district court, however, con-

cluded that "a multiplier, of any amount, would be improper." 618 F.Supp. at 1064. Thus, lead counsels' success in obtaining the $2.2 million, when they sought $5.1 million, was not complete. Rather, the award granted was limited to forty-two percent of the amount sought.[13] Based on that limited success, the district court in its discretion reduced lead counsels' award.

The final step of the analysis requires the district court to arrive ultimately at an attorney's fee that is reasonable in light of the relative success obtained. As we have pointed out, lead counsel obtained in the original fees litigation forty-two percent of the award it sought. In addition to noting the limited extent of lead counsels' recovery, however, the district court also explained the importance lead counsel attached to the multiplier issue in the fees litigation:

> The parties extensively briefed the fee petition litigation; lead counsel alone filed eight legal memoranda and supplemental memoranda. A review of those filings reveals that over 70% of the legal analysis was devoted to the multiplier issue. In addition, lead counsel submitted a deluge of affidavits and deposition testimony on the issue. They also presented significant amounts of evidence on the multiplier issue at the fees hearing; this evidence related to the risk of the underlying litigation, the necessity of fee enhancements in Title VII cases, the exceptional relief secured for plaintiffs, and the time delay between work completed and date of payment. From this, it is obvious that lead counsel spent a great deal of time and energy presenting the multiplier issue to the court; an

---

**11.** Lead counsel initially sought a multiplier of 3.5, but at closing argument in the fees hearing they reduced their request to one for a multiplier of 2.5.

**12.** Application of the 2.5 multiplier to the entire $2.2 million lodestar results in a total of $5.5 million, but as the district court noted lead counsel sought application of the multiplier to less than all of the lodestar. The total fee request, therefore, was $5.1 million. *EEOC v. Burlington Northern Inc.*, No. 78 C 269 (MDL 374) at 11 n. 9 (N.D.Ill. May 15, 1986) [Available on WESTLAW, DCT database].

**13.** Quite apart from the complete lack of success on the multiplier issue lead counsel also achieved limited success on the lodestar issue. Of the $2.2 million awarded to lead counsel as a lodestar, Burlington Northern had conceded that $1.5 to $1.85 million of that amount was justified. The disputed portion of the lodestar recovery, therefore, was not $2.2 million but rather $350,000 to $700,000. The disputed portion recovered as a percentage of the total award sought of $5.1 million was, using this analysis, only 7% to 14%.

issue on which they did not succeed. *EEOC v. Burlington Northern Inc.,* No. 78 C 269 (MDL 374) at 14 (N.D.Ill. May 15, 1986) (citations omitted).

Consequently the district court decided to reduce lead counsels' lodestar by thirty-five percent. In light of lead counsels' overall success in litigating the fee award and all those other factors considered by the district court, we cannot say that the district court abused its discretion by selecting thirty-five percent of the total award sought as the percentage by which the total award would be reduced.

### III. CONCLUSION

Contrary to lead counsels' contentions, *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), does apply to attorney's fees awarded for litigating attorney's fees claims. The district court properly so held and did not abuse its discretion either in deciding to reduce the amount of the award sought by lead counsel or in deciding upon the specific amount by which the award sought would be reduced. Therefore, the order of the district court is

AFFIRMED.