Raffaella Y. NANETTI, Plaintiff–
Appellant, Cross–Appellee,

v.

UNIVERSITY OF ILLINOIS
AT CHICAGO, Defendant–
Appellee, Cross–Appellant.

Nos. 90–2043, 90–2135.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1991.

Decided Oct. 8, 1991.

Judson H. Miner, Davis, Miner, Barnhill & Galland, Thomas E. Johnson, Martin J. Oberman (argued), Chicago, Ill., for plaintiff-appellant, cross-appellee.

Paul K. Whitsitt, Carla J. Rozycki (argued), John A. Klages, Keck, Mahin & Cate, Chicago, Ill., for defendant-appellee, cross-appellant.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Critics of our society's penchant for litigation could make a strong argument on the basis of attorney's fees litigation alone. This case is perhaps paradigmatic. In an action that was settled before it even arrived in the courtroom, this fight over attorney's fees has lasted five years (and counting), has required two decisions by both the district court and this court and has itself generated a request by the plaintiff alone for fees of $45,000. And all of this over a case that we estimated to be worth just $25,000. Considered judgment has been lost in the clamor of combat. With two relatively minor exceptions, we affirm the decision of the district court with respect to both parties' appeals.

## I.

We assume a familiarity with our first opinion in this case, *Nanetti v. University of Illinois at Chicago*, 867 F.2d 990 (7th Cir.1989), and therefore present only a summary review of the events leading to that decision. Nanetti, a university professor, brought suit under Title VII against her employer, the University of Illinois at Chicago, for discriminatory denial of tenure and higher salary. Soon thereafter the University granted Nanetti tenure, and the parties later settled the salary dispute. After the parties settled the merits, the plaintiff sought attorney's fees as a "prevailing party" under 42 U.S.C. § 2000e–5(k) (1982). Although the district court believed that Nanetti was entitled to no attorney's fees because the case was settled, this court reversed, holding that fees can be recovered where the lawsuit is "causally linked to the relief obtained," and the defendant did not act "gratuitously." 867 F.2d at 993. The panel found that the lawsuit had been instrumental in obtaining the raise in salary (although not in securing the grant of tenure), and so under *Hensley v. Ecker-*

*hart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), remanded the case for a determination of the part of the lodestar attributable to this successful claim. In addition, the plaintiff petitioned the district court to recover her fees expended in pursuing her initial fee award (fees-on-fees). Plaintiff requested an overall award of $45,796, approximately two-thirds of which was attributable to litigating the fees.

The district court addressed the apportionment of fees on the merits first. Using calculations we will describe in greater detail later, the district court found that Nanetti's lawyers were due $8,290 for their role in securing the salary settlement. It arrived at that award by multiplying a reasonable hourly rate for each of plaintiff's counsel by the number of hours that attorney spent working on Nanetti's salary claim. Mem.Op. at 5–10, 11–12 (April 11, 1990). The district court agreed to the rate requested by each of plaintiff's counsel, with the exception of her lead counsel, whose requested rate it adjusted from $175 to $125 per hour. *Id.* at 2–3.

The district court then attempted to untangle the fees-on-fees issue. It first decided, in accord with an agreement between the parties, that because the plaintiff's arguments to the court of appeals had been only partly successful, not all of the fees generated during that litigation would be compensated. The court accepted Nanetti's suggested 15% reduction in her lodestar for the fee litigation.[1] *Id.* at 11. The district court went on to apply an additional 35% reduction because plaintiff had been only partly successful in her fee litigation, recovering just 58% of her original request. Implementing these calculations, the district court awarded Nanetti $17,982 in fees-on-fees.

## II.

■ We review a district court's award of attorney's fees for abuse of discretion,

---

1. The district court factored this reduction into the hours requested by each attorney. Mem.Op. at 12 n. 6. Some of Martin Oberman's hours and all of Thomas Johnson's hours were count-ed at 100% because theirs were hours spent after remand from the court of appeals, at which point all arguments centered on salary-related fees.

unless the error alleged is one of law. *Brooms v. Regal Tube Co.*, 881 F.2d 412 (7th Cir.1989); *Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). For purposes of this appeal, we can allocate Nanetti's requested fees to three separate time periods: from Nanetti's retention of counsel in June 1984 to May 1985; from May 1985 to the settlement of the merits on June 30, 1986; and from June 30, 1986 to the present.

We first reach Nanetti's argument that the district court abused its discretion in reducing the hourly rate of her lead counsel, Martin Oberman, through most of this litigation. Our deferential posture in reviewing fee awards notwithstanding, we have previously admonished district courts that would grant less than the hourly rate requested "to give reasons justifying the particular cut that [it] want[s] to impose." *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir.1984). Oberman, who oversaw much of the negotiations and subsequent fee litigation, requested an hourly rate of $175. He supported this request with the affidavits of two attorneys at major law firms in Chicago, who both averred that $175 was a reasonable rate. The University never objected to that requested rate, but the district court thought the better of it nonetheless. "The court has considered [Oberman's] resume and compared it to those of Nanetti's other counsel. The court also is familiar with the rates paid in the Chicago legal market, and has observed Mr. Oberman's work in this matter." Mem.Op. at 2. It then allowed Oberman to bill each hour at only $125.

██ With all due deference to the district court's knowledge of the rates for Chicago attorneys, we believe this reduction constituted an abuse of discretion. As an initial matter, the lack of a challenge to the rate requested by Oberman makes it more difficult to apply any reduction to that rate. Oberman has had no opportunity to build a record on his usual billing rate, other counsel's assessment of his talents or any other relevant, reliable information concerning his request. Particular-

ly in the absence of a challenge to counsel's requested rate, it is imperative that the district court set out with specificity its reasons for reducing that rate. Those reasons were not adequately spelled out in the opinion below. Ordinarily, we would remand this matter for further consideration by the district court, but, in light of the history of this litigation, we think it more appropriate to end the matter here and now. The judgment is therefore modified to award Oberman fees at the rate of $175 per hour.

Unlike the only case cited to us by the University in which a district court reduced counsel's requested rate, *see Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), the reduction in this case did not come as a result of a variance between the requested rate and those rates generally charged in the community. The district court did not believe $175 was too high for the Chicago area; it even awarded another of plaintiff's attorneys $185 per hour for his time. Mem.Op. at 4. Instead, the rate reduction was based on perceived deficiencies in Oberman's skills, based on his resume and the work performed for the court. Oberman has practiced law for twenty-one years, and his record reveals, so far as we can tell, none of the deficiencies the district court's comment might imply. As for the court's first-hand knowledge, the work Oberman performed in this case was almost entirely out of court. His appearances before the district court were largely confined to the initial petition for fees and memoranda in support of the petition. (Another attorney has handled much of the workload since this court's prior disposition.) While we respect the discretionary nature of a fee award, we think reducing Oberman's rate by $50 per hour, based on the oblique justification offered, is unjustified.

We turn next to the errors claimed in the district court's calculations of the hours recoverable in settling the merits (periods one and two). The University argues that no hours in period one should have been counted while Nanetti argues that sixteen hours were wrongly excluded from the two

periods. We reject both arguments. With only minor exceptions, the district court allowed the hours requested by Nanetti's counsel for the period prior to filing the EEOC charge. The University contends that our earlier opinion precludes any award for fees expended during this first period, because that period involved only efforts expended on Nanetti's tenure dispute, not her salary claim. The defendant claims that, under *Hensley*, the tenure issue and the salary issue are not sufficiently related that work on the former (for which fees are not recoverable under our first opinion in this case) can be counted as work on the latter. *Hensley* held that hours spent on an unsuccessful claim might be unrecoverable where that "claim ... is distinct in all respects from [plaintiff's] successful claims...." 461 U.S. at 440, 103 S.Ct. at 1943.

The University ignores our precedents, which clearly state that when time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation. Thus, in *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir.1988), we found that counsel's time spent preparing for trial and trying plaintiff's case was necessary to the one successful claim as well as to the five unsuccessful ones. Therefore the fees attributable to those hours were recoverable.

Before submitting his hours for this period, Nanetti's attorney deleted 13.25 of his 50.25 hours worked, recognizing that some of his efforts involved legwork specific to the tenure claim. The other hours, he contended, involved legal and empirical research that would eventually support both the tenure and salary case against the University. The district court's analysis of this point is lucid and convincing:

> The legal theories in each of Nanetti's claims were the same. Nanetti based her claims on Title VII and its prohibitions against discrimination on the basis of gender. Title VII does not distinguish between discrimination in denial of tenure and discrimination in salary. Both can be unlawful employment practices.

.     .     .     .     .

> The facts underlying each of Nanetti's claims too were similar. The University was a defendant for both claims. In both instances Nanetti would have had to prove at trial that she was a female and that the University intentionally treated her differently from similarly situated male professors. As a result, Nanetti would have had to investigate who at the University made these decisions, how they were made, and their historical results.... In short, legal work on the University's tenure decisions easily could have duplicated legal work on the University's salary decisions.

Mem.Op. at 5–6. We find no abuse of discretion in this careful consideration.

The University argues that suits over tenure and salary are unrelated as a matter of law, citing *King v. McCord*, 707 F.2d 466 (11th Cir.1983), and *Uviedo v. Steves Sash & Door Co.*, 753 F.2d 369 (5th Cir. 1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). These cases in fact support our decision to affirm the period one calculations. *King* recognized that there was a great deal of room for dispute in determining whether promotion and salary claims were "related." 707 F.2d at 467. Even more pertinent is *Uviedo*, in which the court carefully analyzed the facts before it to determine which claims related to others. 753 F.2d at 371–73. The district court's analysis in this case was equally fact-specific, and the judge was well within his discretion in finding the legal work during period one to relate jointly to the tenure and salary claims. We find no abuse of discretion.

Nanetti on the other hand contends that the court erred in denying sixteen hours of her attorney's time during the first period. The district court carefully explained each of its decisions. Two hours were denied because they were specifically recorded as "tenure process" activities. The district court also looked askance at Judson Miner's claim for ten and one-half hours during settlement negotiations. Among plaintiff's

counsel who billed during these negotiations, Miner was the only one not to offer any reduction in hours billed to account for the University's concession of the tenure claim. Coupled with his failure to document these six and one-half hours adequately, Miner's decision not to reduce led the district court to do it for him, bringing his total during the period down to four hours. Finally, the court reduced Oberman's hours by one-third during period two, because of questionable billing practices and an indication in the records submitted for that period that the attorney was pursuing other, ultimately unsuccessful relief from the University. The district court's opinion provides us a "concise but clear explanation" of its reasons for reducing the hours requested, *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941, and we find no abuse of discretion in its decision. *Evans v. City of Evanston*, 941 F.2d 473 (7th Cir.1991).

The last issue before us in both the appeal and cross-appeal is the district court's determination of the fees-on-fees award. The plaintiff complains that the district court abused its discretion in twice reducing the hours she requested for arguing the initial fee petition. The defendant argues conversely that the district court did not reduce enough, specifically because it failed to consider the defendant's settlement offer following the settlement of the merits. Our starting point in this analysis is *In re Burlington Northern, Inc., Employment Practices Litigation*, 832 F.2d 430 (7th Cir.1987), in which we held that *Hensley*'s "prevailing party" analysis applied to requests for fees required to litigate fee awards as well. *Hensley* described two situations in which the district court might reduce the lodestar for lack of success. As we have noted, a fee award might be reduced "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims...." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943, *quoted in Burlington Northern*, 832 F.2d at 434; *see also Spanish Action Comm. v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir.1987). Alternatively, a district court can reduce the lodestar

where "a plaintiff has achieved only partial or limited success." *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941; *see also Zook v. Brown*, 865 F.2d 887, 896 (7th Cir.1989).

Applied to the case before us, therefore, *Hensley* and *Burlington Northern* offered the district court two options. It could find the time spent unsuccessfully researching and arguing the fees for tenure distinct from time spent on the salary issue—and therefore count none of the former toward the lodestar—or it could find the two fees claims interrelated, but nevertheless reduce the lodestar due to its view of the plaintiff's ultimate success in achieving redress.

The 15% reduction offered by the parties themselves fits neatly within the first class of reductions under *Hensley*. Apparently conceding that she could not recover for her fees expended pursuing only tenure-related fees, Nanetti offered to reduce her attorney's fees during the fee litigation by 15% across the board. The appellee itself understood the import of this concession: "Since Nanetti did not prevail on her claim that she was a prevailing party on the tenure issue, on remand, Nanetti sought only 85% of the fees incurred on her initial fee petition [and] appeal." Appellee's Br. at 19. Although the district court accepted that reduction, it did not stop there. "Still, Nanetti's success in her fee litigation was only 58%.... [I]t is [close] to the 42% success of the plaintiffs in *Burlington Northern*, who witnessed a 35% reduction in the lodestar for their lead counsel." Mem.Op. at 13 (citations omitted). Apparently referring to the second of *Hensley*'s two types of reduction (examining the overall success of the litigation in obtaining the relief sought), the court therefore discounted the remaining hours spent on the fee litigation by 35%. Nanetti complains that she was thus subjected to a double reduction, and we must agree.

We do not find error in the methodology of employing both *Hensley* analyses to determine a plaintiff's ultimate fee award. Other opinions from this circuit have recognized situations that might straddle the two types of reduction. *See Jackson v. Illinois Prisoner Review Bd.*, 856 F.2d 890,

894 (7th Cir.1988) ("Having eliminated all unsuccessful, unrelated claims, the district court should tailor the compensable hours for related claims to reflect 'the significance of the overall relief obtained.' ") (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940); *cf. Ustrak v. Fairman*, 851 F.2d at 988. Nevertheless, for a case to require two distinct reductions, the factors considered in formulating each reduction must also be distinct. For example, the prisoner plaintiff in *Jackson* sued the prisoner review board for errors in his parole hearing, complaining (unsuccessfully) of an *ex post facto* problem and (successfully) of a due process violation. We first reduced the lodestar in that case by those hours working specifically on the *ex post facto* claim, and then reduced the resulting figure again to account for the "limited success" the plaintiff achieved on his due process claim. 856 F.2d at 894.

■ Thus, two different reductions from the lodestar can arise as the result of separate and distinct shortfalls of the litigation. The trouble with the reductions allowed in this case is that they were apparently invoked for essentially the same failure. The district court accepted the parties' agreed 15% discount in plaintiff's hours spent litigating the original fee petition. Nanetti offered that cut because her petition for tenure fees had been unsuccessful, and she believed 15% represented the portion of hours spent on that issue. Mem.Op. at 11. That reduction, which the district court accepted, ensued directly from our prior decision in this case that the fees expended for tenure were unrecoverable: because Nanetti had failed to convince this court that she should be awarded fees for her tenure battle, she considered those fees a distinct and unsuccessful claim, and reduced her fees-on-fees request accordingly.

The district court's second reduction stemmed from its observation that "Nanetti's success in her fee litigation was only 58%." Mem.Op. at 13. It computed that success rate by comparing the amount of fees she sought for fighting the merits ($14,365) to the amount recovered ($8,290). *Id.* at 12–13. Of course, plaintiff conceded much of that $6,000 reduction as hours spent seeking tenure, a concession that followed immediately from our decision to disallow those hours. Even the marginal cuts to the request for fees on the merits implemented in the district court's order flowed almost entirely from its findings that Nanetti was wrongly including tenure hours in her fee request. Therefore the $8,290 figure used by the district court for purposes of computing the fee litigation's "success rate" was overwhelmingly the result of this court's decision to deny fees for the tenure dispute.

The district court thus apparently exacted a double reduction for what amounts to the same reason—Nanetti's failure to convince this court of her right to recover fees for winning tenure. While a remand on such issues would ordinarily be appropriate, we believe none is required in this situation. Taking the plaintiff's partial defeat into account, the district court believed that 35% represented an adequate reduction in her fees-on-fees request. Having so decided, the court should not have accepted the parties' offer of a further 15% reduction for the same reasons. Given the amount of Nanetti's eventual recovery for fees on the merits, we do not find the 35% reduction in itself an abuse of discretion. We will therefore apply a 35% reduction to reach a revised calculation of fees-on-fees.

Defendant's cross-appeal on this issue requires only brief discussion. The University argues that it was error for the district court to award *any* attorney's fees for litigating the fee issue because the fees actually recovered for settling the merits of this case only slightly exceeded the amount defendant offered to settle the matter. In several cases discussing exactly this point, this court has exhibited great deference to the district court's decision whether a rejected settlement offer should affect the amount of fees awarded. Thus, in *Coop v. City of South Bend*, 635 F.2d 652, 655 (7th Cir.1980), a panel of this court recognized that the "litigation [had not] been unduly prolonged with no hope of greater recovery," and it therefore affirmed the district court's decision to ignore the settlement offer. Similarly, in

*Vocca v. Playboy Hotel of Chicago, Inc.,* 686 F.2d 605, 607–08 (7th Cir.1982), we deferred to the district court's conclusion that the plaintiff's refusal to settle was unreasonable (in light of counsel's statements that the defendant could afford to pay more), and that this improper refusal could therefore support a decision to deny fees entirely. More recently, in *Brooms v. Regal Tube Co.,* 881 F.2d at 425–26, we remanded the case to the district court with instructions to consider *Coop*'s standard for evaluating this issue. *Cf. Burlington Northern,* 832 F.2d at 435 & n. 13.

Nothing about this case convinces us to abandon this deferential posture. The district court adequately considered the defendant's settlement argument and denied it any probative weight. Considering the apparent reluctance of both parties to bring this litigation to a close, we do not find that the district court abused its discretion.

### III.

To bring to a close this spiraling litigation, we believe it appropriate to calculate ourselves the fee award as modified by our decision and to resolve the inevitable issue of fees for this appeal. *See Jackson,* 856 F.2d at 895–96; *Ustrak,* 851 F.2d at 989–90. As a result of our analysis, the fees for periods one and two (the merits) is increased from $8,290 to $10,915,[2] and the fees for period three are increased from $17,982.05 to $23,056.31.[3]

Plaintiff appealed only related issues under *Hensley,* and was two-thirds successful in its arguments (and possibly more so when one considers the dollar value sought

---

[2] Oberman accounted for 52.5 hours during this time period. Thus the district court's award of $8,290 for fees on the merits must be increased by $2,625, bringing the fee award on the merits to $10,915.

| Attorney | Hours |
|---|---|
| Oberman | 88.35 |
| Mueller | 10.50 |
| Johnson | 58.38 |
| Hyman | 142.50 |

This figure must then be reduced by 35% to account for the plaintiff's limited success in her

and recovered). *Cf. Ustrak,* 851 F.2d at 990. In light of that success, we hold that plaintiff is entitled to two-thirds of her fees in bringing this appeal. Plaintiff shall submit her legal fees attributable to this appeal to the clerk of this court within 15 days of the date of this decision. Defendant will be given ten days to respond with specific objections to the hours requested. *Jackson,* 856 F.2d at 896; *Ustrak,* 851 F.2d at 990. The judgment of the district court is AFFIRMED AS MODIFIED.

---

[3] The increase in fees for this period results from both our decision to award Oberman a rate of $175 and from our decision to reduce the fees-on-fees award only by 35%, rather than by the sum of 15% and 35%. Multiplying the period three hours by the appropriate hourly rate, we reach the following result:

fee litigation, leaving Nanetti $23,056.31 in fees for this period.