**Michael WELTON, Plaintiff,**

v.

**H. Garry OSBORN, et al., Defendants.**

**No. C–1–96–159.**

United States District Court, S.D. Ohio, Western Division.

Aug. 15, 2000.

---

David G. Torchia, Cincinnati, OH, Steven R. Keller, Columbus, OH, for Plaintiff.

Ralph G. Winters, Cincinnati, OH, for Defendant.

DECISION AND ENTRY OVERRULING PLAINTIFF'S RULE 60(B) MOTION FOR RELIEF FROM JUDGMENT (DOC. # 73); DECISION SETTING FORTH AMOUNT OF ATTORNEY'S FEES AND COSTS AWARDED TO PLAINTIFF, PURSUANT TO DECISION AND ENTRY OF AUGUST 16, 1999 (DOC. # 71)

RICE, Chief Judge.

This litigation stems from Plaintiff Michael Welton's allegation that Defendant H. Garry Osborn and others retaliated against him for engaging in constitutionally protected speech.[1] In his Complaint (Doc. # 1), Welton, a former employee of the Portsmouth (Ohio) City School District, alleged that Osborn retaliated against him for his criticism of cheating in the administration of a scholastic achievement test. He also claimed that, in retaliation for his speech, he was reassigned to a teaching position and was later terminated. The above-captioned matter was tried to a jury, which returned a verdict in favor of Welton and against Osborn. On November 3, 1998, the Court entered judgment against Osborn in the amount of $242,625. (Doc. # 53). That judgment consisted of $177,000 in compensatory damages and punitive damages in the amount of $65,625. (Id.).

Thereafter, Welton filed a Motion to Alter or Amend Judgment (Doc. # 58), in which he sought an amendment to the Court's judgment entry "to reflect that

---

1. A jury found the other Defendants not liable following an October, 1998, trial. Consequently, the Court's analysis herein will address only Osborn.

Defendant Osborn shall take whatever steps are necessary to insure that the additional contributions that would have been made to the retirement system on Plaintiff's behalf had he retained his administrative position are in fact made." In support of his Motion, Welton insisted: (1) that "[t]he evidence was clear and basically undisputed that [he] lost $80,975 in back pay"; and (2) that "the parties were in agreement that if [he] prevailed, retirement contributions on back pay would be made 'by operation of law.'" (*Id.* at 2).

Osborn opposed the Rule 59 Motion on two grounds. *First,* he asserted that under Ohio law only Welton's former employer, the Portsmouth City School District, could make contributions to the State Teacher's Retirement System ("STRS"). Given that the School District was found not liable by the jury, however, Osborn argued that Welton's request was "a legal impossibility." (Doc. # 61 at 2). *Second,* Osborn claimed that the jury's compensatory damages award did not specify what portion of the award was attributable to back pay and what portion was attributable to non-economic losses. Absent an interrogatory identifying what percentage of the compensatory damages award constituted back pay, Osborn contended that it would be "pure speculation" for the Court to assume that back pay damages totaled $80,975. Moreover, absent a specific damages figure for back pay, Osborn insisted that his alleged STRS liability could not be computed.

In response, Welton filed a reply Memorandum, in which he recognized that Osborn could not be ordered to make STRS contributions directly. He insisted, however, that nothing prevented the Court from ordering Osborn to make the STRS payments to the School Board, which, in turn, could forward those payments to STRS on his behalf. Welton also asserted that the jury's failure to apportion compensatory damages between back pay and non-economic losses (i.e., emotional distress) did not preclude the Court from ordering Osborn to make STRS payments to the School Board. In support, he reasoned: "[T]here was no dispute that Plaintiff's back pay was $80,975. Defendants accepted Plaintiff's calculation and presented no alternative figure or argument as to back pay." (Doc. # 66 at 1–2).

After reviewing the parties' respective Memoranda, the Court found itself unable to sustain Welton's Rule 59 Motion. In its August 16, 1999, Decision and Entry, the Court reasoned as follows:

> In support of his Motion, Welton makes two crucial assertions: (1) that the amount of back pay at issue was undisputed; and (2) that an agreement exists obligating Osborn to make STRS contributions. Although the Court recalls Welton presenting evidence on the issue of back pay, the Court has no specific recollection of the issue being "undisputed." Furthermore, if defense counsel agreed that Osborn would make STRS payments on behalf of Welton, then the payment scheme proposed by the Plaintiff (Osborn making payments to the School Board, with the Board forwarding those payments to STRS on Welton's behalf) may be feasible. Once again, however, the Court has no specific recollection of the existence or non-existence of such an agreement. Consequently, the Court will overrule the Plaintiff's Motion to Alter or Amend Judgment, based upon his failure to provide evidentiary support for his request. The Plaintiff may raise the issue again, however, in the context of a Rule 60(b) Motion for relief from judgment.

(Doc. # 71 at 9).

In accordance with the foregoing ruling, Welton filed a Rule 60(b) Motion, with supporting evidentiary materials, on September 15, 1999 (Doc. # 73). That Motion, which has been fully briefed, is now before the Court for resolution. In support of his Rule 60(b) Motion, Welton has provided the Court with excerpts of a transcript of its charging conference with counsel. During that conference, the Court dis-

cussed the need for a jury instruction regarding fringe benefits. Welton's counsel expressed his belief that no such instruction was required, stating:

> ... My view of the case is that if Mr. Welton prevails and recovers back pay from this jury, by operation of law, other fringe benefits, such as pension contributions, will be made by the school board, or should be made by the school board. I don't believe that we have to include those other types of fringe benefits.

(Transcript Excerpt, attached to Doc. # 73 at 5). Welton's counsel subsequently stated that no jury instruction regarding fringe benefits was needed, provided "that if Mr. Welton prevails and back pay is awarded that those fringe benefits he's otherwise entitled to through the back pay are taken care of by the Defendants." (*Id.* at 6).

> In response, counsel for Osborn stated:
>
> Your Honor, I agree that there has been no evidence of those things [fringe benefits] and it would be improper to instruct the jury, because they may add those on. To the extent that Mr. Welton would be entitled to them, it would be by operation of state law, and there's no reason to give the jury the opportunity to add to that.

(*Id.*).

The Court agreed with the reasoning of counsel and also noted that "there is no evidence of what portion of Mr. Welton's salary or, for that matter, what sums in addition represent fringe benefits." (*Id.* at 5). As a result, the Court did not instruct the jury regarding retirement contributions or any other fringe benefits.

˙ The foregoing colloquy makes clear that counsel for both parties assumed Welton's entitlement to STRS retirement contributions would arise "by operation of law." In retrospect, that assumption has proven to be problematic, given that the jury subsequently found only Osborn, the Superintendent of the Portsmouth City School District, liable to Welton in his individual capacity. Although Welton also had named as Defendants the Board of Education of the Portsmouth City School District and the individual Board members, the jury found those Defendants not liable under 42 U.S.C. § 1983. The parties agree, however, that under Ohio law, STRS contributions are made by teachers themselves and by their employers. In the present case, Welton's employer was the Board of Education, which has been found not liable for his demotion and subsequent termination.

As set forth above, Welton recognizes that Osborn cannot be ordered to make STRS contributions directly. He suggests, however, that the court may order Osborn to make the STRS payments to the School Board, which, in turn, could forward those payments to STRS on his behalf. Neither party has cited, and the Court has not found, any case law addressing this particular issue. Upon review, however, the Court discerns no legal basis for ordering Osborn to make retirement contributions to the School Board, or for ordering the School Board to forward the contributions to STRS. The only entity charged by law with making STRS contributions has been found not liable. Welton's entitlement to retirement contributions may well have arisen "by operation of law" *if* the School Board had been found liable, but it was not. The fact that Welton now seeks a Court order requiring Osborn to make such contributions demonstrates that his entitlement to the contributions *has not* arisen "by operation of law."

█ As set forth above, the parties appear to have assumed, albeit incorrectly, that if Welton were to prevail at trial, he would prevail against all of the Defendants and the School Board would be liable for STRS contributions "by operation of law." The parties do not appear to have contemplated the possibility that Welton might prevail against Osborn, in his individual capacity, but not the other Defendants.

Had Welton's counsel contemplated that possibility, he might have presented evidence regarding Welton's loss of STRS contributions. If such evidence had been presented, the jury might have included the lost contributions in its compensatory damages award. Such evidence was not presented, however, and no jury instruction regarding retirement contributions was requested or provided.

In short, the Court concludes that the proper method for Welton to have obtained payment for the lost STRS contributions *from Osborn,* who has been found liable under § 1983 in his individual capacity, was to present evidence on the issue, and to seek recovery in the form of compensatory damages. Although Welton failed to do so, the Court discerns no legal basis for ordering the procedure now requested. Accordingly, Welton's Rule 60(b) Motion for Relief from Judgment (Doc. # 73) is overruled.

Having resolved the Rule 60(b) issue, the Court turns now to the last unresolved matter in this litigation, namely the amount of attorney's fees to which Welton is entitled. In its August 16, 1999, Decision and Entry (Doc. # 71), Court sustained both a Motion for Attorney's Fees and Expenses (Doc. # 59), and a Supplemental Motion for Attorney's Fees and Expenses (Doc. # 69), filed by Welton. Through those Motions, Welton sought to recover a total of $74,200 for attorney's fees and $3,547.61 for expenses.[2] Welton supported the Motions with an affidavit from his counsel, attesting to the time spent working on this litigation. Welton also provided affidavit testimony and other evidentiary materials in an attempt to establish the reasonableness of counsel's hourly rate and the hours expended in this lawsuit. Finally, Welton argued that his request for attorney's fees and expenses was reasonable because he qualified as the "prevailing party."

In response to Welton's initial Motion for Attorney's Fees and Expenses (Doc. # 59), Osborn raised only one argument.[3] He contended that a significant portion of the work Welton's counsel purportedly performed in this case actually pertained to related litigation in a case captioned, *Canary v. Osborn, et al.,* No. 95cv00944, which was then pending before the Sixth Circuit, following the District Court's denial of the School Board members' Motion for Summary Judgment on the issue of legislative immunity.[4] In a Memorandum in opposition, Osborn reasoned as follows:

> ... Any time spent on the *Canary* case cannot be imputed to the defendants in this matter. A review of plaintiff's counsel's affidavit concerning the time spent on plaintiff's case reveals that in March of 1997, alone, the 14.25 hours listed for that month all concern the *Canary* case. Depositions taken of defendant's witnesses pertain to both cases and must be broken out as such.

(Doc. # 60 at 2).

In reply, Welton recognized that much of the work his counsel performed was pertinent to both cases (i.e., witness depositions that were used in both cases). He insisted, however, that such mutually beneficial efforts could be billed as attorney's fees in this case, because it clearly was

**2.** Welton's Supplemental Motion (Doc. # 69) included a five-hour reduction in the time billed by his attorney. The figure set forth above reflects that reduction. Welton's counsel made the five-hour reduction after Osborn objected to the fee application on the basis that it included some work related solely to the *Canary* litigation. (Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees, Doc. # 60). This five-hour reduction will be addressed more fully, *infra.*

**3.** Osborn did not respond to the Supplemental Motion for Attorney's Fees and Expenses (Doc. # 69), which the Court sustained in its August 16, 1999, Decision and Entry (Doc. # 71).

**4.** The Sixth Circuit recently affirmed U.S. District Court Judge Susan J. Dlott's denial of summary judgment to the School Board members on the basis of absolute legislative immunity. *Canary v. Osborn,* 211 F.3d 324 (6th Cir.2000).

related to this case. Welton also recognized that if attorney's fees were recovered in this case for work that was relevant to both cases, then any such work could not, and would not, be included in a subsequent fee application in *Canary*. Finally, Welton disputed Osborn's assertion that a significant portion of the hours set forth in counsel's fee application in this case related *solely* to the *Canary* case. To the contrary, Welton contended that only a tiny fraction of the work billed in this case related solely to the *Canary* case (approximately twenty-six pages of questioning in one deposition and six pages in another deposition). In order to account for that work, Welton's counsel voluntarily reduced his fee application by five hours.[5] (Doc. # 65 at 3).

Upon review, the Court sustained the two Motions for attorney's fees and expenses, noting that Osborn challenged only the amount of such fees and expenses, and not Welton's entitlement to the same. (Doc. # 71 at 11–12). The Court declined to determine the proper amount of fees and expenses, however, without first allowing Osborn to respond to the five-hour reduction proposed by Welton's counsel.[6]

Osborn filed his response on August 30, 1999 (Doc. # 72). Therein, he does not specifically address the five-hour reduction offered by Welton's counsel. Instead, Osborn insists that much of the work performed by Welton's counsel in connection with the present litigation also proved useful in the related lawsuit brought against the same Defendants by Gabe Canary.[7] Consequently, Osborn reasons as follows:

5.  As set forth, *supra,* that five-hour reduction was reflected in Welton's Supplemental Motion for Attorney's Fees and Expenses (Doc. # 69).

6.  The Court gave Osborn an opportunity to respond because Welton's counsel proposed the five-hour reduction in a reply Memorandum.

7.  The *Canary* case involves the same Defendants and the same law firms.

Plaintiff maintains in his reply memo that his counsel has included the time spent on the Canary case in his fee application in the instant case only where it involved depositions and travel for both cases and where that time was clearly related to this case. Plaintiff then goes on to state that Mr. Canary will not include that time in the fee application if Mr. Canary prevails in his case. It is improper for an award of attorney fees to the plaintiff in this case to subsidize Mr. Canary's litigation, no matter how closely related the cases might be. Defendants do not have to pick up the tab for work that might have been necessary for both cases, only for work done on Welton's case. Plaintiff's counsel is trying to put all the material that might be closely related into the instant case because there is already a judgment that triggers an award of attorney's fees.

Since Plaintiff cannot separate out the time spent on Canary's case versus the time spent on Welton's case, the fairest division would be a 50/50 split between the times listed in plaintiff's motion for attorney's fees. The plaintiff has the burden to separate the time. Thus, all discovery common to both the Welton and Canary cases should be halved....

(Doc. # 72 at 1–2).[8]

■ Upon review, the Court finds Osborn's argument to be unpersuasive. As an initial matter, the Court notes his failure to demonstrate, or even to argue, that more than five hours should be reduced from Welton's fee application to account for work that related *solely* to the *Canary*

8.  In the remainder of his Memorandum, Osborn argues that a number of specific discovery-related expenses were incurred in connection with both the present case and the *Canary* litigation. As a result, he proposes that only fifty percent of such joint preparation expenses should be recoverable as attorney's fees herein.

litigation. As a result, the Court concludes that the proposed reduction by Welton's counsel of five hours from his fee application is reasonable.

The only issue raised by Osborn is whether the Court may award full attorney's fees herein for work that jointly benefitted Welton in the present case and Canary in his own lawsuit against the Defendants. For example, Osborn cites attorney's fees charged by Welton's counsel for several depositions that were used in both lawsuits. Given that the depositions were mutually beneficial to Welton and to Canary, Osborn reasons that all expenses incurred by Welton's attorney (including travel and preparation time) in connection with such depositions should be divided, with fifty percent of those expenses being assigned to the present lawsuit and fifty percent being attributed to the *Canary* case, and charged as attorney's fees therein, if Gabe Canary prevails. According to Osborn, such a procedure would reduce counsel's fee application in the present case by $11,500.

While the procedure suggested by Osborn might well reduce Welton's counsel's fee application by $11,500, he cites no legal authority to support such a division. Insofar as Welton seeks to recover attorney's fees for expenses that were reasonably and necessarily incurred in connection with the present litigation, such recovery will be allowed, even if his counsel's work jointly benefitted Gabe Canary in another lawsuit. Although neither party has cited any legal authority addressing the present situation, case law from other circuits supports such a conclusion. In *Pinkham v. Camex, Inc.,* 84 F.3d 292 (8th Cir.1996), for example, the plaintiff, Mary Ellen Pinkham, brought a copyright infringement action against several defendants, including L'Eggs Brands, Inc. ("L'Eggs"). Pinkham's corporation also brought a diversity action against most of the same defendants. The two cases were consolidated for trial, and a jury awarded damages against the defendants in both cases. Thereafter, the district court determined that ninety percent of the attorney's fees incurred by Pinkham's counsel were attributable to work required for both actions, whereas ten percent of the fees were attributable solely to the diversity case. The district court then allocated the ninety percent "joint preparation" fees to the copyright action and, in so doing, awarded Pinkham attorney's fees for the work that was necessary to both actions. Upon review, the Eighth Circuit found no abuse of discretion, reasoning:

> L'Eggs argues the district court abused its discretion in deciding to apportion to the diversity action only those hours dedicated "solely" to it and to allocate to the copyright action hours which were necessary to both actions. We conclude that the determination that 90% of the billed time was necessary to both actions is sufficient to recover for all the time spent in joint preparation. *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 420 (3d Cir.1993) (if fees incurred in other litigation were for work product actually utilized, time spent in other litigation was "inextricably linked" to issues in present litigation, and plaintiff was not previously compensated, court may include all fees); *Nanetti v. University of Ill. at Chicago,* 944 F.2d 1416, 1419 (7th Cir.1991) (time for joint preparation allowed even where only one claim produces recovery). Accordingly, we affirm the attorney's fees award.

*Id.* at 294.

The foregoing reasoning applies equally in the present case. Although the lawsuits brought by Welton and Canary were not joined for trial, they involved largely the same operative facts and the same Defendants. Many of the issues in the two cases were unquestionably "inextricably linked." As a result, it was quite reasonable for Welton's counsel to use the same discovery materials in both cases. The fact that his counsel's discovery work jointly benefitted the Plaintiffs in both cases, however, does not mean that the attorney's fees incurred

for such mutually beneficial work must be apportioned between the two actions. Regardless of whether counsel's discovery efforts also benefitted Canary in his separate lawsuit, the fact remains that the discovery expenses were also incurred in connection with Welton's lawsuit. Consequently, the Court concludes that Welton is entitled to recover herein for all attorney's fees and expenses that were reasonably and necessarily incurred in the present litigation, even if counsel's work was necessary to both cases.[9]

On the other hand, Welton may not recover attorney's fees herein for any work that his attorney performed solely in connection with Gabe Canary's lawsuit. As set forth above, Welton's attorney has reduced his fee application by five hours to account for such work, and Osborn has not challenged that reduction. Consequently, the Court finds said reduction to be reasonable.

After taking into account the five-hour reduction, Welton's final application for attorney's fees totals $74,200, with additional costs of $3,547.61. (Doc. # 69 at 2). This request has been properly supported with affidavits and authenticated records. (Doc. # 59; Doc. # 69). As set forth above, an affidavit from Welton's counsel attests to the time that he spent working on this litigation. Other affidavits and evidentiary materials have been provided by Welton to establish the reasonableness of his counsel's hourly rate and the hours expended in this lawsuit. Finally, Welton has argued that his request for attorney's fees and expenses is reasonable because he qualifies as a "prevailing party."

In response, Osborn has not disputed any of the foregoing assertions. Rather, as set forth above, he argues only (1) that the Court may not award Welton attorney's fees for work related solely to the *Canary* case and (2) that the Court should apportion the attorney's fees for any mutu-

ally beneficial work between the two cases. With respect to the first issue, Welton's attorney has excluded five hours from his fee application, and the Court has found that reduction to be reasonable, particularly in light of Osborn's failure to voice any specific objection. With respect to the second issue, the Court simply finds Osborn's argument to be unpersuasive for the reasons set forth herein.

With respect to the reasonableness of counsel's fee request, the Supreme Court recognized in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hours which are excessive, redundant or unnecessary should be excluded. *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.1994). Finally, the resulting sum must be adjusted to reflect the "results obtained." *Id.* "This involves two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Id.*

With the foregoing standards in mind, the Court finds Welton entitled to the full amount of attorney's fees and costs requested above. Welton has provided the Court with affidavits and a list of expenses, setting forth the hours worked and the hourly rate charged by his counsel. (Doc. # 59; Doc. # 69). These records reflect that counsel billed Welton at a rate of $200 per hour. Welton has provided the Court with affidavit testimony stating that the rate charged by his attorney is at or below the rate charged by similarly qualified attorneys in the community. (Doc. # 59 at Exh. C, D). Osborn does not

9. Obviously, no "double recovery" will be permitted for any legal work relevant to both cases. In other words, no subsequent recov-ery should be permitted in *Canary* for legal work that is compensated in the present case through an award of attorney's fees.

dispute this assertion. Applying the foregoing rate, Welton incurred attorney's fees of $74,200 and costs of $3,547.61. After reviewing the materials submitted by Welton, the Court finds that these expenses were both reasonably and necessarily incurred.

■ Finally, the results obtained by Welton justify a full award of attorney's fees and costs. As set forth above, this determination involves two questions: " 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?' " *Wayne,* 36 F.3d at 531. In the present case, Welton achieved success on his § 1983 claim against Osborn. Although he did not prevail on that claim against the School Board or its individual members, those claims were based on a common core of facts and somewhat related legal theories. Consequently, his failure to prevail against those other Defendants will not serve to reduce his award, particularly in light of the fact that he obtained a substantial judgment against Osborn.[10] *Cf. Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160 (6th Cir.1996); *Matlock v. Barnes,* 932 F.2d 658, 668 (7th Cir.1991) ("Under 42 U.S.C. § 1988, a plaintiff may be awarded reasonable attorney's fees as a prevailing party if he or she succeeds on 'any significant issue in litigation which achieves some of the benefit sought in bringing the suit.' [citation omitted]. The defendants here thus cannot complain that they are being charged for preparation and presentation of some claims which plaintiff ultimately lost, for example the claims against defendants in their individual capacities.").

Welton also admits, however, that his attorney spent "minimal time" pursuing a breach of contract claim which was dismissed on summary judgment. To adjust for that lack of success, Welton represents to the Court that his attorney already has subtracted ten hours from his total hours. According to Welton, this ten-hour reduction is far greater than the time his attorney actually spent on the breach of contract issue. (Doc. # 59 at 8–9). Osborn has not disputed or even addressed this representation. Consequently, the Court discerns no basis for reducing Welton's request for attorney's fees of $74,200 and costs of $3,547.61. Finally, the Court concludes that Welton's success against Osborn easily justified the fees and expenses that he incurred in pursuing this litigation.

Based on the reasoning and citation of authority set forth above, the Plaintiff is hereby awarded attorney's fees in the amount of $74,200 and costs in the amount of $3,547.61, pursuant to 42 U.S.C. § 1988.

---

10. In reaching this conclusion, the Court also notes that Osborn has not addressed this issue or argued that the attorney's fee award should be reduced to reflect Welton's failure to recover against the School Board and its members.