The **GEORGE HYMAN CONSTRUCTION COMPANY, Petitioner,**

v.

**James E. BROOKS, Respondent.**

No. 89–1553.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 28, 1991.

Decided May 15, 1992.

Stewart S. Manela, Vienna, Va., with whom Fred S. Sommer, Washington, D.C., was on the brief, for petitioner.

Peter J. Vangsnes, with whom James A. Mannino, Washington, D.C., was on the brief, for respondent. Inez Alfonzo–Lasso, Atty., Dept. of Labor, Washington, D.C., also entered an appearance, for respondent.

Before D.H. GINSBURG, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The George Hyman Construction Company ("Hyman" or the "Company") seeks reversal of a Benefits Review Board (the "Board") award of $13,455.84 in attorney fees in connection with Mr. James E. Brooks's claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1986) (the "Act"), as applied to the District of Columbia, 36 D.C.Code §§ 501, 502 (1973).[1] Hyman argues that reversal is necessary because the Board failed to appreciate the teachings of the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). We agree that *Hensley*'s rationale applies to the Act, that the administrative law judge ("ALJ") misconstrued its requirements, and, consequently, that a reversal in part is warranted and a remand in part is needed.

## I.

This case stems from an accident at a construction site over a decade ago. May 7, 1981 found Respondent Brooks, a Hyman employee, stripping plywood from a ceiling when a board fell on his large left toe. In subsequent workers' compensation hearings, Brooks advanced two theories as to why the toe injury rendered him totally and permanently incapable of returning to work and, thus, deserving of full compensation under § 908(a) of the Act. Under the first, Brooks claimed that the toe injury triggered a psychiatric illness apparently known as "conversion reaction hysteria." Under the second, he asserted that the toe injury caused recurring pain and numbness in his leg, hip, and back.

The ALJ rejected both of Brooks's total disability theories. Nonetheless, and on his own motion, the ALJ found Brooks deserving of a twenty percent permanent partial disability rating for his damaged left foot pursuant to § 908(c) of the Act; he subsequently awarded Brooks $11,968.73. We note that the Company had previously vol-

---

**1.** Though the Act governs this case, we note that it has since been replaced as the dominant scheme for providing workers' compensation benefits in the District of Columbia. *See* 36 D.C.Code §§ 301–345 (1981).

untarily paid Brooks compensation for a ten percent disability rating of the injured toe.

Merits decided, the ALJ turned to the question of whether Brooks ought to recoup his attorney fees and costs from Hyman. As is perhaps typical of our times, it is here that the real dispute began. The ALJ was presented with a bill from Brooks totalling approximately $24,000, roughly twice the size of actual benefits received by claimant. Hyman argued that fee recoveries under the Act should be limited to work done on successful claims; further, it contended that since claimant's counsel spent approximately one hundred percent of their time on the unsuccessful total disability claims, and it was the ALJ who raised the only successful issue, no fees should be awarded.

The ALJ rejected Hyman's argument, concluding instead that the §§ 908(a) and (c) claims were too "interrelated" to separate out in a claim-by-claim analysis such as Hyman suggested. The ALJ also dismissed a further Hyman suggestion that any award should be reduced to reflect the degree of success Brooks achieved in pursuing his claims. He stated that the "test for determining whether services are compensable is [not success, but] whether the attorney, at the time he performed the services, reasonably regarded the work as necessary to establish claimant's entitlement to benefits." *Supplemental Decision and Order Awarding Attorney's Fees by Administrative Law Judge Frank F. Marcellino*, Oct. 24, 1985, at 2–3 (citation omitted) (the *"ALJ Fee Order"*).

Appeals to the Board were taken by both parties. Brooks challenged the disposition of his § 908(a) total and permanent disability claims, while Hyman sought reversal of the fee award. The Board affirmed the ALJ's opinion in all respects. Claimant has now dropped his total, permanent disability claims and, consequently, the only issues before us revolve around the fee award.

## II.

## A.

■ In *Hensley v. Eckerhart*, the Supreme Court defined the conditions under which a plaintiff who prevails on only some of his claims may recover attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Specifically, it provided for a two-step inquiry focused on the following questions:

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*See Sierra Club v. EPA*, 769 F.2d 796, 801 (D.C.Cir.1985), discussing *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. Under the first inquiry, if the lawsuit presents unrelated claims—some successful and others not—a court must confine fee awards to work done on the successful claims. The reason: "a plaintiff should not be able to force his opponent to pay for the legal services involved in bringing groundless claims simply because those unsuccessful claims were brought in a lawsuit that included successful claims." *Sierra Club*, 769 F.2d at 801. Simply put, *Hensley*'s first prong requires a trial court or ALJ to conduct an examination of the hours counsel expended on each claim in the case, weeding out work done on unrelated unsuccessful claims from any award.

■ Under the second *Hensley* inquiry, the factfinder must then consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel. When an injured party obtains "excellent results, his attorney should recover a fully compensatory fee." 461 U.S. at 435, 103 S.Ct. at 1940. When a party achieves "only partial or limited success," however, then compensation for all of the "hours reasonably expended on the litigation as a whole ... may be an excessive amount." *Id.* at 436, 103 S.Ct. at 1941.

■ Though the *Hensley* analysis was crafted in the § 1988 context, it was explicitly designed by the Court to apply to all federal statutes limiting fee awards to " 'prevailing part[ies].' " *See id.*, at 433 n.

7, 103 S.Ct. at 1939 n. 7. In response, lower courts have adopted its instructions in a wide array of statutory settings. *See, e.g., Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984) (Employee Retirement Income and Security Act); *Citizens Council of Delaware County v. Brinegar,* 741 F.2d 584, 595 (3d Cir.1984) (Equal Access to Justice Act); *Rosebrough Monument Co. v. Memorial Park Cemetery Association,* 736 F.2d 441, 446 (8th Cir.) (attorney fees provisions for antitrust plaintiffs), *cert. denied,* 469 U.S. 981, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984); *United Slate Workers Association, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984) (Fair Labor Standards Act); *Erkins v. Bryan,* 598 F.Supp. 240, 245 (M.D.Ala.1984), *aff'd,* 785 F.2d 1538 (11th Cir.1986) (Labor–Management Reporting and Disclosure Act).

### B.

■ The first issue now before us is whether the *Hensley* rationale applies to the Act as well. We hold that it does, and come to our conclusion impressed by the language and history of the Act and influenced by the authority of others who have reached this question before us. The Act provides in pertinent part that

> if the compensation ... awarded [by the Board] is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded....

33 U.S.C. § 928(b).[2]

To be sure the Act does not, as claimant emphasizes, use the term "prevailing party" anywhere in § 928(b). However, it is a vain project to rely, as claimant does, on the absence of this particular verbiage to prove *Hensley*'s irrelevance. The thrust of the *Hensley* opinion is devoted not to the use of the words "prevailing party," but to the concept encompassed within those words. This Circuit has already held that

the *Hensley* rationale applies to statutes not containing the "prevailing party" formulation, but requiring a degree of success as requisite to the award of counsel fees.

In *Sierra Club,* 769 F.2d at 796, we considered the fee recovery provision of the Clean Air Act which allows an award "whenever [a court] determines that such award is appropriate." 42 U.S.C. § 7607(f) (1982). On its face, the Clean Air Act is significantly less analogous to *Hensley* than the one we now address: far from bearing the "prevailing party" language, it does not expressly require any showing of success. Still, we held *Hensley*'s rationale applicable because caselaw developed under that statute did condition the receipt of fees upon a showing of some success on the merits. *See Sierra Club,* 769 F.2d at 799.

The present case is stronger for the application of *Hensley* than was *Sierra Club.* The Act before us requires on its face a showing of success on the merits before any fee becomes appropriate. By its terms, the attorney fees provision is triggered only "if the compensation ... awarded ... is greater than the amount paid or tendered by the employer or carrier." 33 U.S.C. § 928(b). Even when triggered, the statute provides only a fee "based solely upon the difference between the amount awarded and the amount tendered or paid." *Id.* This language differs less from the wording of the statute before the *Hensley* Court than did the language before our *Sierra Club* Court, and the concept differs in no determinative way.

Respondent argues that the language of the Act defining fee recovery as "based solely upon the difference between the amount tendered and the amount awarded" precludes an initial step-by-step analysis of success. In fact, the Board so held in *Columbus Cherry v. Newport News Shipbuilding and Drydock Co.,* 8 BRBS 857 (1978). There the Board honored attorney fee claims for services attributable to issues on which claimant lost, reasoning that

---

**2.** 33 U.S.C. § 928(b) rather than § 928(a) of the Act applies here because the Company had al-

ready tendered some compensation to Brooks.

"[a]ll of counsel's services can be considered for a fee award, as long as he succeeded in increasing ... compensation." *Id.* at 864.

We reject both respondent's suggestions and the Board's holding in *Cherry.*[3] The Act's use of the word "solely" does not preclude an issue-by-issue examination of success but, rather, suggests that once success on an issue is demonstrated, recovery is limited "solely" to work done to increase compensation on that particular issue. This view of the Act is confirmed by the legislative history. *See* H.R.REP. No. 1441, 92d Cong., 2d Sess. 9, 20, *reprinted in* 1972 U.S.C.C.A.N. 4698, 4706, 4717. As explained by a Report by the House Committee on Education and Labor (the "House Report"), the Act's fee provision

> authorize[s] assessment of legal fees against employers in cases where the existence or extent of liability is controverted and the claimant succeeds in establishing liability or obtaining increased compensation in formal proceedings or appeals. Attorneys fees may only be awarded against the employer where the claimant succeeds, and the fees awarded are to be based on the amount by which the compensation payable is increased as a result of litigation.

*Id.* at 9, *reprinted in* 1972 U.S.C.C.A.N. 4706.

Respondent argues that reading the Act in this fashion will work an injustice. Specifically, he contends that application of *Hensley,* in conjunction with an apparent regulatory prohibition against fee contracts and fee recovery if benefits are not obtained,[4] will leave claimant's counsel "run[ning] a substantial risk of not being paid at all." Respondent's Brief at 7 n. 3. We find this appeal to policy arguments

unavailing, however, in light of Congress's declaration of its own policy intentions.

Significantly, we are not the first court to reach the question of *Hensley's* applicability to the Act. The First Circuit has already faced this issue and resolved it much as we do today. *General Dynamics Corp. v. Horrigan,* 848 F.2d 321, 325 (1st Cir.), *cert. denied,* 488 U.S. 992, 109 S.Ct. 554, 102 L.Ed.2d 581 (1988). We pause to note that, though we owe it no special deference, *see supra* n. 3, the Board too has appeared to acknowledge the "pertinen[ce]" of *Hensley* under the Act. *Stowars v. Bethlehem Steel Corporation,* 19 BRBS 134, 136 (1986).

In sum, we find that the Act's substantive language demands application of *Hensley's* two-step inquiry. In doing so, we act in consonance with *Sierra Club,* the legislative history of the Act, and the First Circuit's decision on the matter.

### III.

■ Given *Hensley's* relevance, we next turn to consider the ALJ's handling of its first inquiry. In conducting this analysis, again, the factfinder is obliged to prevent claimant from "piggybacking" fees incurred for work done on losing claims onto unrelated winning issues. *See Sierra Club,* 769 F.2d at 801. Still, *Hensley* does instruct that if successful and unsuccessful claims share a common core of facts or are based on related legal theories, then a court should simply compute the appropriate fee as a function of degree of success. *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940. In sum, if the claims are interrelated, a court is to skip the first *Hensley* inquiry and move to its second.

---

**3.** We note that we owe the Board's statutory interpretations no special deference as under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). *Hastings v. Earth Satellite Corp.,* 628 F.2d 85, 94 (D.C.Cir.) ("the Benefits Review Board is not a policymaking agency.... The Board's opinion [interpreting its statute] thus is not entitled to our deference."), *cert. denied,* 449 U.S. 905, 101 S.Ct. 281,

66 L.Ed.2d 137 (1980). *See also Tri–State Terminals, Inc. v. Jesse,* 596 F.2d 752, 757 n. 5 (7th Cir.1979).

**4.** *See United States Department of Labor v. Triplett,* 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990); 33 U.S.C. § 928(e); 20 C.F.R. § 702.-132(a).

## A.

■ In the instant case, Hyman argued that the unsuccessful § 908(a) total disability claims on which claimant failed were unrelated to the § 908(c) partial disability claims on which he did succeed. Consequently, the Company contended, Brooks was entitled to no fee recovery for work done on the losing § 908(a) claims.

The ALJ rejected Hyman's argument, finding instead that all claims in this case were interrelated. In doing so, however, the ALJ provided little explanation for his result. In fact, he merely cited the now-rejected *Cherry* decision for the proposition that counsel should recoup fees accrued on all issues if he succeeds on any issue; noted that *Hensley* permits such a result when issues are interrelated; and then bluntly stated, without more, that the issues in this case are interrelated.

While we are mindful of the special deference owed factfinders in the award of attorney fees, *see Hensley*, 424 U.S. at 437, 103 S.Ct. at 1941, this decision is unacceptable, even ignoring the reference to *Cherry*. The ALJ completely failed to explain or even intimate what factors present in this particular case warranted an interrelatedness finding. We cannot defer to such silence in either the attorney fee or administrative agency contexts. *Hensley* made plain that, despite the latitude factfinders enjoy in assigning fees, "[i]t remains important ... for the [factfinder] to provide a concise but clear explanation of its reasons for the fee award." *Id.* Likewise, the well-worn pages of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), teach that in the administrative context "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Id.* at 94, 63 S.Ct. at 462. This is so because "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Id.* at 87, 63 S.Ct. at 459. Given these admonitions, and provided as we are here with no basis on which to analyze the adequacy of

the ALJ's conclusions, we cannot affirm on this reasoning.

■ Thus, we turn to the Board's decision on review. Rather than focusing on the particulars of this case, however, the Board seemed to suggest that an interrelatedness finding was justified here as a matter of law because of its findings in a pair of prior cases: *Battle v. A.J. Ellis Construction Company*, 16 BRBS 329 (1984) and *Stowars*. Rather than curing the defects in the ALJ's opinion, however, the Board's heavy reliance on these cases merely exacerbates them.

*Cherry*, decided in a pre-*Hensley* environment, again stated that claimant's counsel was entitled to recover fees for work done on all issues after winning on only one. *Battle* and *Stowars*, coming after *Hensley*, were merely attempts to save *Cherry*'s rule of complete recovery despite *Hensley*s contrary suggestions. They did so by asserting that "[i]n most cases [under the Act], the issues are too inter-related to permit allocation of the fee between successful and unsuccessful issues." *Battle*, 16 BRBS at 331. Simply put, they explained that complete recovery under *Cherry* was justified in a post-*Hensley* world because nearly everything under the Act is interrelated.

*Battle* and *Stowars*' presumption of interrelatedness cannot support its own weight, let alone that of the case before us. First, it runs contrary to Congress's suggestions that courts can and should distinguish between those issues on which claimant succeeds and fails. *See* House Report, *supra*. Second, it does not merely reconcile or explain *Hensley* as the Board seems to suggest; rather it eviscerates *Hensley* by ignoring the Court's statement that most fee award issues "essentially are factual matters," 461 U.S. at 437, 103 S.Ct. at 1941, and by inviting abandonment of half of *Hensley*'s holding. Finally, we note that even on the facts which initially justified the presumption, the conclusion is dubious. The First Circuit's decision in *Horrigan* and the Board's in *Battle* involved the same question of whether a disability claim was interrelated with a retaliatory

discharge complaint under the Act. The Board found the two issues sufficiently intertwined to justify its presumption; the First Circuit held the two very same issues completely severable by any reasonable factfinder. *Horrigan*, 848 F.2d at 326.

In sum, we reject the interrelatedness presumption, as there may indeed be occasions when claims under the Act are easily severable. At the same time, we do not ignore the possibility that many claims might be interrelated. Each case, with its separate facts and varying legal theories, however, deserves a separate look, as the different outcomes on similar claims in *Battle* and *Horrigan* suggest. We ask only what the Court in *Hensley* required: that the factfinder offer a brief, but clear, explanation of his reasons for concluding claims severable or interrelated in each case. *See* 461 U.S. at 437, 103 S.Ct. at 1941.

### B.

■ To this point, we have concluded that neither the explanations given by the ALJ nor those proffered by the Board can pass muster on review. The ALJ's failure to provide reasons is fatal under both *Hensley* and *Chenery*. His failure is not cured by the Board's troublesome presumption that most cases under the Act are interrelated.

Ordinarily, we might at this point remand with instructions to the ALJ and Board to detail the reasons for their interrelatedness conclusion in this case. On occasion, however, we find that a remand would be futile on certain matters as only one disposition is possible as a matter of law. In such cases, we retain and decide the issue. *Chenery* and its progeny, while emphasizing the importance of agency explanations, do not "require that we convert judicial review of agency action into a ping-pong game." *NLRB v. Wyman–Gordon*

*Co.*, 394 U.S. 759, 766–67 n. 6, 89 S.Ct. 1426, 1430 n. 6, 22 L.Ed.2d 709 (1969).

The question of interrelatedness in this case is one on which remand would indeed be futile: no rational factfinder conscientiously applying *Hensley*'s teachings could find the § 908(c) claim in this case to be interrelated with the § 908(a) claims. No matter how massaged, such a result would necessarily trench upon *Hensley*'s dictates.

■ The Supreme Court in *Hensley* instructed that claims are interrelated if they are based on the same facts or legal theories. *See* 461 U.S. at 434–35, 103 S.Ct. at 1940. Giving this formulation content, the Court has explained that interrelated claims are those that "cannot be viewed as a series of discrete claims." *Id.* at 435, 103 S.Ct. at 1940.

In the instant case, however, the total and partial disability claims are based on different factual theories. The facts needed to demonstrate total disability—whether due to psychiatric or physical causes—go well beyond the simple medical reports needed to establish a partially dysfunctional foot. And, indeed, the record is replete with expert medical testimony aimed at establishing these additional factors; still, only two bare medical reports regarding the foot itself were apparently introduced—one of which the Company had already conceded was correct.[5]

Likewise, the claims are based on different legal theories. This is evidenced by the fact that respondent apparently never pressed the potential § 908(c) claim in his brief to the ALJ or even in argument.[6] Respondent made a tactical decision to vie for complete recovery, to channel his resources and argument into one legal theory. It was left to the ALJ to acknowledge and adopt § 908(c) as a separate legal basis for recovery.

---

**5.** One report—assessing Brooks's injury as a ten percent disability to the left great toe—was accepted by Hyman. The other—by a Dr. Bruno—was apparently the only report to mention specifically a twenty percent disability rating for the left foot.

**6.** Hyman asserts—and respondent nowhere contests in brief before us—that "in his opening statement, closing argument and brief to the ALJ, Claimant's counsel argued exclusively" the § 908(a) claims. Petitioner's Reply Brief at 5.

The differing prerequisites for recovery under §§ 908(a) and (c) reinforce our conclusion that the claims in this case are not interrelated. A total disability claim under § 908(a) "is an economic and not a medical concept" based on claimant's loss of wage-earning capacity. *American Mutual Insurance Co. of Boston v. Jones,* 426 F.2d 1263, 1265 (D.C.Cir.1970). Conversely, a scheduled disability under § 908(c) must "be made on the basis of physical impairment alone." *Bachich v. Seatrain Terminals of Calif.,* 9 BRBS 184, 187 (1978). In sum, § 908(a) requires more, both in law and fact, than need be alleged and proved under § 908(c).

In some cases it may prove well nigh impossible for any reasonable factfinder to divide the hours expended on a claim-by-claim basis, or "sever[ ] [counsel's work on different issues] in any meaningful sense." *Horrigan,* 848 F.2d at 325. However, this case presents none of the administrative problems that propelled the Supreme Court in *Hensley* to note that an issue-by-issue examination of success is not always possible. A cleaner and clearer demarcation between issues could not be asked for than we are presented with here: the successful claim was raised by the ALJ himself, while claimant's counsel focused all their attention on the unsuccessful issues in this case.

In sum, we conclude that the § 908(a) claims are unrelated to the § 908(c) claims and acknowledge, as all parties do, that they were unsuccessful. Consequently, we must find that no fee award based on work performed in their pursuit is appropriate.

### IV.

▮ Having reversed the ALJ and Board's interrelatedness determination and their award of fees on the § 908(a) claims, one issue remains: what of the § 908(c) partial disability claim? It was successful and, thus, appears to survive the first *Hensley* inquiry. Under *Hensley,* any work done by respondent's attorney in its pursuit is subject to limitation only based upon an examination of whether the level of success achieved makes the hours reasonably expended a satisfactory basis for making a fee award. *See* 461 U.S. at 436, 103 S.Ct. at 1941.

We return to the ALJ's decision, again recognizing the deference due a factfinder's initial judgment. In doing so, we find that the ALJ completely refused to conduct a second-step *Hensley* inquiry with regard to this claim:

> Although some courts have held that attorney fees should be adjusted according to the degree of success obtained, ... [t]he Board's test for determining whether services are compensable is whether the attorney, at the time he performed the services, reasonably regarded the work as necessary to establish claimant's entitlement to benefits.

*ALJ Fee Order,* at 2–3 (citation omitted). Though the ALJ appeared at least to acknowledge the relevance of *Hensley*'s first step, he nonetheless dismissed the Supreme Court's prescribed degree of success examination as nothing more than the suggestion of "some courts." Interestingly, the Board did nothing to disabuse the ALJ of his apparent belief that he could ignore *Hensley*'s second step. Rather, it merely confirmed the ALJ's erroneous assumption that an inquiry into whether the attorney himself reasonably thought the work he performed was necessary is somehow relevant to a *Hensley* analysis. It is not.

The ALJ and Board's utter failure to conduct a second-step *Hensley* review on the § 908(c) claim cannot be countenanced. Thus, we remand for consideration of work done by respondent's counsel on the § 908(c) claim alone in light of the degree of success achieved on this issue alone. In doing so, we recognize that the amount of work done by counsel on this claim may be nearly negligible: again, Hyman asserts, and respondent does not appear to contest, that respondent's counsel worked exclusively on the § 908(a) claim. *See supra* n. 6. In fact, it may be that the only work counsel did on the § 908(c) issue was to provide the ALJ with Dr. Bruno's medical report, *see supra* n. 5, from which the ALJ drew his own conclusions. However, this Court is not in a position to affix a specific

dollar figure to such work and, thus, we return the matter to the Board.[7]

### CONCLUSION

We find *Hensley* applicable to the Act and in doing so reject *Cherry*. We reverse the ALJ and Board's interrelatedness determination and the presumption embodied in *Battle* and *Stowars*. Consequently, we find no fee award due on the § 908(a) claims. As to the successful § 908(c) claim, we remand, instructing the Board to apply a second-step *Hensley* analysis and provide a clear and concise explanation of its reasons for any award.

*It is so ordered.*

---

7. We do not address Brooks's additional claim for interest on the counsel fees, raised for the first time in his reply brief on appeal, as it is mooted in any event by our disposition of the principal claim.