**Julie GOOS, Appellant,**

v.

**NATIONAL ASSOCIATION OF REALTORS.**

**No. 92–7010.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1993.

Decided July 23, 1993.

---

1566

Alan Banov, Washington, DC, argued the cause and filed the brief, for appellant.

David D. Hudgins, Alexandria, VA, argued the cause and filed the brief, for appellee.

Before WALD, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Dissenting opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

BUCKLEY, Circuit Judge:

Appellant Julie Goos succeeded in establishing that the National Association of Realtors dismissed her in violation of the District of Columbia Human Rights Act but now contests the district court's assessment of the attorney fees she is to be awarded. One of her arguments is that the district court improperly reduced the fees because of her failure to prevail on a contract claim that it erroneously found to be unrelated. Because we agree that the district court misread the Supreme Court's standard for determining whether claims are interrelated, we remand the case so that the court may exercise its discretion within the proper legal framework.

## I. BACKGROUND

### A. Facts

On August 2, 1989, a jury found that the National Association of Realtors ("NAR") improperly dismissed Ms. Goos in violation of the District of Columbia Human Rights Act, D.C.Code Ann. §§ 1–2501 to 1–2557 (1992) ("DCHRA"). Ms. Goos alleged that the NAR had discharged her because she had opposed a directive to dismiss Reina Squire, who is black, on the grounds that Ms. Squire's dismissal was racially motivated.

Ms. Goos's original Complaint contained two counts: Count I alleged a violation of the DCHRA, and Count II, a breach of a contract established by the NAR's employee handbook. Just before trial, the district court granted summary judgment to the defendant on Count II of the Complaint. Also just before trial, the defendant extended an "Offer of Judgment," pursuant to Federal Rule of Civil Procedure 68, in the amount of $18,000, "inclusive of all costs accrued to-date." Joint Appendix ("J.A.") at 211. Ms. Goos rejected the offer.

In her Complaint, Ms. Goos sought $500,-000 for loss of pay and other benefits and $1 million for "embarrassment, humiliation, indignity, and other injuries." J.A. at 16. At trial, Ms. Goos argued that she had proven $19,000 to $20,000 in damages for backpay and lost benefits, and she continued to seek damages for humiliation, embarrassment and indignity. The jury awarded Ms. Goos

$9,000. *See Goos v. National Ass'n of Realtors,* 57 Fair Empl.Prac.Cas. (BNA) 1531, 1532, 1991 WL 333725 (D.D.C.1991).

Having succeeded in recovering $9,000 in damages under Count I, Ms. Goos petitioned the district court for attorney fees under sections 2553(a)(1)(E) and 2556(b) of the DCHRA. D.C.Code Ann. §§ 1–2553(a)(1)(E), 1–2556(b). Ms. Goos sought fees and costs in the amount of $57,063.61, less the $3,514.38 in costs already paid by the NAR, for a total of $53,549.23. *See Goos,* 57 Fair Empl.Prac.Cas. (BNA) at 1532.

The district court found that Ms. Goos had agreed to pay her attorney flat fees of $130 and $140 per hour, *id.* at 1534, and that her attorney "appears to have exercised generally good billing judgment, with the exception of the fees for filing this fee petition." *Id.* at 1532. The court went on, however, to make five separate adjustments to the fee request.

First, the court reduced the pre-summary judgment fee request by 30 percent to take account of Ms. Goos's failure to prevail on the contract claim, which it found to be unrelated. *See id.* at 1533. Second, the court reduced all the fees by 50 percent to reflect Ms. Goos's "limited success" at trial. *Id.* at 1533–34. Third, it reduced by an additional 50 percent the amount requested for preparation of the fee petition, on the grounds that the hours spent on the petition were excessive. *See id.* at 1534. Fourth, it enhanced the award by five percent across the board to account for the delay between the time the fees were incurred and the time they will be paid. *See id.* at 1534–35. Finally, in light of its decisions on the fee request, the court determined that the judgment, fees, and costs that Ms. Goos obtained were less favorable than the NAR's settlement offer. Therefore, pursuant to Federal Rule of Civil Procedure 68, which mandates that the offeree pay costs incurred after rejecting an offer more favorable than the ultimate judgment, *see* Fed.R.Civ.P. 68, the court entirely eliminated Ms. Goos's fees for work performed after the NAR had made its offer. *See Goos,* 57 Fair Empl.Prac.Cas. (BNA) at 1535.

On appeal, Ms. Goos challenges the four reductions to her fee award. In addition to

defending the district court's analysis, the NAR seeks sanctions against Ms. Goos under Federal Rule of Appellate Procedure 38, or costs against Ms. Goos under Rule 39. As these requests are either meritless or premature, they do not warrant discussion here. We do, however, address Ms. Goos's challenges to the district court's decision.

### B. Legal Framework

Under the D.C.Code, a plaintiff may choose to take a discrimination complaint to "any court of competent jurisdiction." D.C.Code Ann. § 1–2556(a). Upon finding a violation, a court "may grant such relief as ... is provided in § 1–2553(a)." *Id.* § 1–2556(b). Such relief includes "[t]he payment of reasonable attorney fees." *Id.* § 1–2553(a)(1)(E).

■ "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby,* —— U.S. ——, —— 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (internal quotation marks omitted) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). In assessing the "degree of success,"

> two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

### II. ANALYSIS

Ms. Goos's primary argument is that the district court erred in holding that her contract and the DCHRA claims were not related, and thus erred in reducing her pre-summary judgment fees by 30 percent for work done on the failed contract claim. Ms. Goos also argues that the district court wrongly found that she had achieved limited success on the remaining claim and that it wrongly reduced her request for fees for filing the fee petition. Before turning to these arguments, we address whether the district court prop-

erly found that the fee agreement signed by Ms. Goos and her attorney established a reasonable rate.

### A. Rate

■ Ms. Goos sought reimbursement from the district court at a rate of $130 per hour to August 21, 1989, and $140 per hour thereafter. *See Goos,* 57 Fair Empl.Prac.Cas. (BNA) at 1534. The district court found that "[p]laintiff's counsel has provided sufficient information regarding his education, experience, and background to warrant an hourly fee of $130 to $140 per hour." *Id.* at 1532.

Ms. Goos now argues that although she and her attorney agreed to fees of $130 and $140 per hour (depending on the date the services were rendered), the contractual rate was too low. Having abandoned a request for a contingency fee enhancement in light of the Supreme Court's decision in *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), Ms. Goos argues here that the "fair" result would have been to compensate her attorney at the "market rate" of $220 to $240 found in the schedule (or matrix) of prevailing community rates adopted in this circuit. *See Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1525 (D.C.Cir.1988) (en banc) ("*SOCM* ").

Disregarding for the moment that Ms. Goos had requested the district court to award her fees at the $130 and $140 rates, we have held that attorneys who quote a client a discounted rate to reflect non-economic goals may be compensated at prevailing market rates. *See SOCM,* 857 F.2d at 1520, 1524. Ms. Goos, however, has failed to prove that her attorney quoted her a discounted rate or that the rate she was charged was below market.

In her pleadings before the district court, Ms. Goos argued not only that the contractual rates were the same as those her attorney charged "other clients," but also that they were "fully consistent with, and perhaps even lower than, the normal rates charged by other firms for work of similarly experienced attorneys." J.A. at 312. At oral argument, her attorney affirmed that the rate charged to Ms. Goos was the same as that charged to

all his clients. There is nothing in the record, therefore, to suggest that Ms. Goos's attorney offered her a discounted rate for altruistic reasons. Absent evidence of a discount, and in light of her testimony that her lawyer's customary rate was in line with community rates, we see no reason for upsetting the district court's acceptance of the contractual fee as reasonable.

## B. Related Claims

■ The district court found that Ms. Goos's "claims were substantially distinct, each having its own nucleus of operative facts" and that "[a]lthough there was some overlap in the evidence, plaintiff's loss on the contract claim had little or no effect on the reprisal claim." *Goos*, 57 Fair Empl. Prac.Cas. (BNA) at 1533. Accordingly, and in reliance on the *Hensley* rule that time expended by an attorney on a claim that was unrelated and unsuccessful "cannot be deemed to have been expended in pursuit of the ultimate result achieved," the court reduced Ms. Goos's pre-summary judgment fee request by 30 percent. *Id.* (internal quotation marks and citations omitted) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940).

Ms. Goos argues that the district court misapplied *Hensley*. According to her, the central issue in both claims was whether the NAR discharged her for retaliatory reasons; the two claims therefore shared a common core of facts. We agree; and in light of this error of law, we remand the case for a redetermination of the fees.

■ Under the Supreme Court's framework, related and unrelated claims are to be treated differently for purposes of assessing attorney fees. In *Hensley*, the Court outlined the distinction between related and unrelated claims. According to the Court,

> [i]n some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim.

*Hensley*, 461 U.S. at 434–35, 103 S.Ct. at 1940. In such cases, the factfinder is "to prevent claimant from 'piggybacking' fees incurred for work done on losing claims onto unrelated winning issues." *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1537 (D.C.Cir.1992) (citing *Sierra Club v. EPA*, 769 F.2d 796, 801 (D.C.Cir.1985)).

By contrast,

> [i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

■ In assessing the fees for related claims, "a court is to skip the first *Hensley* inquiry and move to its second." *Brooks*, 963 F.2d at 1537. Thus, "if successful and unsuccessful claims share a common core of facts[,] . . . a court should simply compute the appropriate fee as a function of degree of success." *Id.* (citing *Hensley*, 461 U.S. at 434–35, 103 S.Ct. at 1939–40).

Here, both claims focused on a single, necessary factual issue: whether the NAR had dismissed Ms. Goos in retaliation for her refusal to dismiss Ms. Squire. The contract count turned on proving that she had been discharged not for a valid business reason but in retaliation for her actions. *See* J.A. at 156–57. Similarly, Ms. Goos alleged an unlawful reprisal under the DCHRA. *See* J.A. at 137–42. In short, Ms. Goos's two claims constituted different legal attacks on the same factual premise—that the NAR had engaged in a retaliatory dismissal. Only by establishing this central and difficult-to-prove factual premise could Ms. Goos recover on either of her two legal theories.

In its summary judgment order, the district court cast the case in this same light. Ms. Goos had argued that "[t]he reason for [her] termination [was] the central factual issue of the case." J.A. at 162. The district

court seemingly accepted this argument by describing the case as follows:

> Plaintiff Julie Goos alleges that defendant National Association of Realtors ... fired her in retaliation for her refusal to carry out instructions she felt were racially-motivated to terminate Reina Squire, an NAR employee under her. Her complaint has two counts.

J.A. at 250.

In its decision on Mrs. Goos's attorney fee claim, however, the court placed its focus on the distinction between the legal claims rather than on their common factual basis. Thus, it found that "[t]he reprisal claim necessarily was based upon the overt and covert actions of the defendant while the contract claim was necessarily based upon the language of the employee handbook." *Goos,* 57 Fair Empl.Prac.Cas. (BNA) at 1533. As a consequence, the court's finding ignored its earlier characterization of the case.

Furthermore, the district court misread the Supreme Court's *Hensley* opinion in two ways: first by seeming to require a virtually complete factual overlap between the counts, and second by beginning the analysis not with the "common core of facts" but rather with the distinctions between the two legal challenges. *Hensley* mandates that distinct legal challenges based on essentially the same factual allegations be treated as related claims. The court ought to have assessed the extent of the factual overlap and not begun and ended its analysis with the essentially legal distinctions between the two counts.

Our opinion here is consistent with our previous cases applying *Hensley,* the most recent of which is *George Hyman Constr. Co. v. Brooks.* That case stemmed from an accident at a construction site in which Mr. Brooks suffered an injury to his left big toe. *Brooks,* 963 F.2d at 1534. Mr. Brooks sought total disability status on two theories: First, he claimed that the toe injury triggered a psychiatric illness known as "conversion reaction hysteria"; alternatively, he asserted that the toe injury caused recurring pain in his leg, hip, and back. See *Id.* The administrative law judge ("ALJ") rejected both permanent disability claims but found

Brooks partially disabled due to the injury to his foot. See *Id.* In awarding Brooks his attorney fees, the ALJ concluded that the total and partial disability claims were interrelated and awarded attorney fees based on the total time devoted to the case. On appeal, we found that the partial disability claim was unrelated to the two total disability claims because they were "based on different factual theories." *Id.* at 1539.

A review of the ALJ's opinion in *Brooks* illustrates the basis for that finding and highlights the distinctions between that case and this one. Mr. Brooks's partial disability claim turned on an injury to his toe and foot; the testimony supporting the finding of partial disability consisted of two doctors' reports (one uncontested) regarding the "grossly comminuted malunited fracture" of his toe. See *Brooks v. George Hyman Constr. Co.,* Department of Labor No. 83–DCW–673, at 5, 9 (Jan. 30, 1985); *see also Brooks,* 963 F.2d at 1539.

Mr. Brooks's total disability claim centered on completely different injuries: a psychological disorder, *see Brooks,* Department of Labor No. 83–DCW–673, at 7–8, and a back injury that allegedly arose from degenerative changes in his spine or from limping caused by the toe injury. *Id.* at 8–9. This back injury took Mr. Brooks to numerous doctors who sought in vain to establish some physiological basis for his back pain. *See id.* at 9.

This record illustrates that the factual bases for each *Brooks* claim were distinct, as were the factual issues at the core of each claim: Each involved different injuries, medical theories, doctors, and medical reports; each turned on distinct legal and factual conflicts. Whether Mr. Brooks had injured his toe was not at issue; that injury was merely an uncontested fact. In this case, by contrast, each claim required presentation of the same evidence and proof of the same issue: that Ms. Goos had been dismissed in retaliation for her refusal to dismiss Ms. Squire.

Our decision today is also consistent with our decision in *Sierra Club v. EPA,* 769 F.2d 796 (D.C.Cir.1985). In that case, petitioners challenged the EPA's regulatory response to a standard and controversial practice among

major sources of air pollution: building taller smokestacks to disperse a given amount of pollutants over a greater area. See *Id.* at 802. Specifically, petitioners challenged regulations governing two of the three methods that the EPA proposed for implementing a Clean Air Act directive that emissions limitations be calculated as if smokestacks were no higher than "good engineering practice" required. *Id.* The case turned on such issues as the definition of the word "nearby," the definition of "excessive concentrations," and the EPA's failure to consider "plume rise." *Id.* at 803–04.

The court held that "[w]hile all the issues in the case are related in the sense that they arise from the same set of regulations and the same administrative record, we do not believe that they are therefore inseparable for the purposes of attorneys' fees." *Id.* at 803. Because "[e]ach issue" addressed "a particular substantive concern of the petitioners with a particular aspect of EPA's regulations," the EPA advanced "different policy rationales" and invoked different "statutory provisions" in response to each challenge. *Id.* The court therefore labelled each claim "legally distinct." *Id.*

Nothing in the *Sierra Club* analysis undermines the rationale for finding the claims in this case to be related. In *Hensley*, the Court stated that claims may be related if they are based on "a common core of facts *or* ... on related legal theories." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (emphasis added). The *Sierra Club* decision turned on a finding that the claims were not legally related; but as *Sierra Club* was a rulemaking, the case did not involve "historical" facts. Rather, the court addressed only a common administrative record, a common procedural history, and no more. The *Sierra Club* court held at most that such procedural common ground is not enough on its own to establish that claims are related; it says nothing about the types of claims, outside of the administrative rulemaking context, that may be factually related.

In sum, the district court ignored its own determination that the spine that bound the case was one central, factual allegation: that Ms. Goos was the victim of a retaliatory dismissal. Having found this, the district court was required "to skip the first *Hensley* inquiry and move to its second." *Brooks*, 963 F.2d at 1537.

As to that second inquiry, the Supreme Court stated that even where a plaintiff's claims are interrelated, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. We remand to the district court so that it may perform the second *Hensley* inquiry, an assessment of "the significance of the overall relief obtained by the plaintiff." *Id.* at 435, 103 S.Ct. at 1940. We do so fully "cognizant of the general reluctance to remand attorneys' fees litigation and thus potentially add to the fees incurred." *Grano v. Barry*, 783 F.2d 1104, 1113 n. 4 (D.C.Cir.1986). But as it is not possible for us to determine what alternative adjustments the district court might make in its fee award in light of our decision, "remand is the only prudent course." *Id.* Although we hold that the court erred in treating Counts I and II as unrelated claims, on remand the court will "necessarily ha[ve] discretion" to determine the degree of plaintiff's success in pursuing her claims, *id.* at 1112 (quoting *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941); and if it finds a reduction in fees to be in order, it may either "attempt to identify specific hours that should be eliminated, or ... may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941. These equitable judgments are left to the discretion of the district court. *See id.*

C. Reduction for Limited Success

■ Ms. Goos challenges the district court's 50 percent reduction of fees because of her limited success in seeking damages for her DCHRA claim. As we remand for reconsideration of this issue in light of our holding on the issue of relatedness, we do not address the adequacy of the court's specific determination. But because of our special concerns surrounding remands of attorney fees litigation, we take this opportunity to highlight the extent of the district court's discretion and to show that Ms. Goos's chal-

lenges represent a misunderstanding of the legal framework. *Cf. Grano*, 783 F.2d at 1113 (answering the District of Columbia's challenges to specific categories of fees despite remanding the fee calculation to the district court).

Ms. Goos argues, first, that her $9,000 jury verdict is more successful than it appears because the district court erred in instructing the jury to deduct unemployment compensation from the damage award. Ms. Goos's claim here is twice-speculative and thus collapses on its own uncertain foundation. To begin with, Ms. Goos's attorney admitted at oral argument that he had not appealed the district court's jury instruction—there is no legal basis, therefore, for claiming that the instruction was in error. Secondly, there is nothing in the record to suggest that the jury necessarily reduced Ms. Goos's award on these grounds. Ms. Goos's theory, at its most concrete, explains the final award by speculating that the jury reduced the award by a certain amount in acceptance of the allegedly erroneous instruction, and added $697 in order to round upward to an even number. Because this court tries not to base its decisions on mind reading, this argument is not enough to suggest that the $9,000 award ought to be considered larger for the purposes of determining whether Rule 68 of the Federal Rules of Civil Procedure may be invoked in calculating the amount of attorney fees that may be awarded.

Ms. Goos also claims that because the $9,000 award represents most of the backpay claimed, she achieved a very high degree of success. As noted, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. Furthermore, "[w]here recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, — U.S. at —, 113 S.Ct. at 575 (internal quotation marks omitted) (quoting *Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring)). These deter-

minations are left to the discretion of the district court.

The court, in its consideration of success, met its obligation by comparing Ms. Goos's $9,000 jury award to the $19,000 to $20,000 claim for pay and benefits and the open-ended claim for humiliation made by her attorney at closing argument. *See* J.A. at 280–82. Although the court must perform this analysis again in light of our opinion, it is on solid legal footing when it compares the $9,000 award to the relief requested by Ms. Goos.

## D. Other Claims

Ms. Goos contests the district court's additional deduction of 50 percent from her request for fees incurred in preparation of the fee petition. She argues that the magnitude of the fees-for-fees request grew out of the circumstances of the case, such as the NAR's refusal to negotiate and the need for a reply, and that the court abused its discretion in cutting this fee request by an additional 50 percent.

We have made it clear that "there is a point at which thorough and diligent litigation efforts become overkill." *Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C.Cir.1991). At such point, "[t]he district court must disallow claims for excessive, redundant, or otherwise unnecessary charges." *Id.* (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40). As long as it presents some evidence of overkill in support of trimming the fees-for-fees request, we will not disturb the district court's discretionary adjustments. *See id.* at 1346–47 (upholding a 40 percent cut in the fees-for-fees request).

In this case, the district court noted that $6,296 in fees was requested for services rendered *after* the jury had entered its $9,000 award and that "[t]he time spent on these [fees-for-fees] briefs has virtually equalled the time spent during the trial of this case." *Goos*, 57 Fair Empl.Prac.Cas. (BNA) at 1534. Finding the hours for the fee petition and a few supplemental filings to be "gross excess," the court cut the fees-for-fees request by half. *Id.* This comparison of the amount of work required to present the trial

with the relatively sparse filings associated with the fee petition constitutes a sufficient, albeit a skeletal, explanation for the court's exercise of its discretion.

Finally, Ms. Goos contends the district court erred in finding that the total of her damages and costs did not exceed the $18,000 offered by appellee and, as a consequence, that she was precluded by Rule 68 from recovering her post-offer attorney fees and costs. She apparently argues that attorney fees do not constitute "costs" within the meaning of the Rule. There may be some support for this position. *See Marek v. Chesney*, 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985) ("where the underlying statute defines 'costs' to include attorney's fees, . . . such fees are to be included as costs for the purposes of Rule 68"); *cf. DCHRA*, D.C.Code § 1–2553. Nevertheless, we do not address this question because it was inadequately briefed and because the district court must, in any event, recalculate the total fees and costs in light of our opinion today.

### III. CONCLUSION

We find that the district court misread the Supreme Court's *Hensley* opinion in reducing Ms. Goos's pre-summary judgment fees by 30 percent. As Ms. Goos's claims were interrelated, the court should have moved directly to the second *Hensley* inquiry, the determination of the degree of Ms. Goos's success. Because that inquiry is subject to the discretion of the trial court, and because Ms. Goos's failure to prevail on her contract claim must be considered as part of that analysis, we remand the case.

*So ordered.*

STEPHEN F. WILLIAMS, Circuit Judge, dissenting:

The majority has adopted a troubling solution to the problem of attorneys' fees in a case of multiple claims, one successful and the other not. First, the court extracts from *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a far more rigid rule for handling the problem than *Hensley* requires. Second, when combined with our decision in *George Hyman Const. Co. v.*

*Brooks*, 963 F.2d 1532 (D.C.Cir.1992), the disposition here puts district judges in an unnecessary dilemma, where they run serious risks of reversal if they make the wrong call (i.e., one not in accord with the opinion of a reviewing panel) on an issue that should be—by Supreme Court precedent—left to their discretion. By imposing rather synthetic rules on a phase of the fee calculation process that does not lend itself to rules at all, the decision will increase the work of district judges and inspire unnecessary appellate litigation—and yet yield nothing in the way of fairer or more uniform fee awards.

In its reliance on *Hensley*, the majority seems to catch the notes better than the music. There the district court had refused to divide the attorneys' hours between winning and losing claims. 461 U.S. at 438, 103 S.Ct. at 1942. In the passages noted by the majority here, the Supreme Court distinguished between cases involving "distinctly different claims for relief that are based on different facts and legal theories", *id.*, and ones where "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories", *id.* at 435, 103 S.Ct. at 1940. In the first type, "counsel's work on one claim will be unrelated to his work on another", *id.* at 435, 103 S.Ct. at 1940, whereas in the second,

> Much of counsel's time will be devoted generally to the litigation as a whole, *making it difficult to divide the hours expended on a claim-by-claim basis.* . . . . Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435, 103 S.Ct. at 1940 (emphasis added). The focus—as the emphasized phrase indicates—was on practicalities, not purism.

This reading is underscored by the Court's disposition. Recall that the district court had *refused* to divide hours as between winning and losing claims. Though reversing, the Court explicitly said that, "[g]iven the interrelated nature of the facts and legal theories in this case, the District Court *did not err in refusing to apportion the fee award mechanically* on the basis of respon-

dents' success or failure on particular issues." *Id.* at 438, 103 S.Ct. at 1942 (emphasis added). Acknowledging that the ultimate award may well have been consistent with its own holding, the Court remanded solely because the district court had failed to consider the relation between "the extent of success and the amount of the fee award." *Id.* Thus the stress was *not* on some magic formula for severing or refusing to sever, which the district court must get right—"mechanically"— on pain of reversal. Rather it was on the need for the district court to make a suitable downward adjustment for wasted legal effort, and to make its rationale for the adjustment reasonably clear.

It is quite true that some courts have read *Hensley* somewhat in accord with the view prevailing in this case, in the sense that almost any significant overlap is deemed to prevent any sort of up-front cutback for unsuccessful claims. See, e.g., *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir.1983) ("Under th[e *Hensley* ] analysis, an unsuccessful claim will be *un* related to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised") (emphasis in original). Whatever the merits of that approach, it would have perverse effects in this circuit because of our prior *insistence* on precisely such a cut in *George Hyman Const. Co. v. Brooks,* 963 F.2d 1532 (D.C.Cir.1992).

There is indisputably daylight between the fact pattern of this case and that of *Brooks,* but not much. In both there is one unifying core—here, the retaliatory motivation for the dismissal of plaintiff, in *Brooks* the injury to the left big toe. In both there are completely separate branches—here, (A) the threshold prerequisite to contractual recovery, namely plaintiff's establishing a right to be terminated only "when economic or other reasons force the Association to reduce the number of its staff" (which the plaintiff failed to show), and (B) the D.C. Human Rights Act claim on which she ultimately made a partial recovery; in *Brooks,* (A) psychiatric and other consequences allegedly causing total dis-

ability, and (B) a more limited claim of partial disability. Although one might characterize *Brooks* as involving simply one issue (the *scope* of the damage from the toe injury), we said there that it was an abuse of discretion for the agency *not* to sever the claims for fee computation purposes, 963 F.2d at 1539, while here the court finds an abuse of discretion in the district court's decision to sever. Moreover, in *Brooks* we said that "[a] cleaner and clearer demarcation between issues could not be asked for," implying that there were plenty of cases with less related claims that could—and perhaps *must* —be severed. 963 F.2d at 1540. District court "discretion" within such a narrow window is scarcely worthy of the name.

To limit the district court's discretion in this way creates a fertile ground for appeals and reversals, in conflict with the Supreme Court's exhortation that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); accord *INS v. Jean,* 496 U.S. 154, 163, 110 S.Ct. 2316, 2321–22, 110 L.Ed.2d 134 (1990); *Pierce v. Underwood,* 487 U.S. 552, 556, 108 S.Ct. 2541, 2545, 101 L.Ed.2d 490 (1988). District court discretion is a core device to streamline fee litigation. As to highly case-specific and fact-bound issues—which means most of the issues in a fee determination—intense appellate scrutiny will not yield clear rules that either facilitate the speedy resolution of fee disputes or assure like treatment of like cases. See *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 933–34 (7th Cir.1989) (en banc) (deference appropriate in highly fact-specific contexts because "the role of appellate courts in establishing and articulating [general] rules of law is not at stake"); accord *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir.1988). Thus the Supreme Court stressed in *Hensley* that district court discretion in determining the amount of a fee "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 437, 103 S.Ct. at 1941. One of course hopes that district courts will be able to thread their way be-

tween *Brooks* and *Goos,* but I see no reason for us to create such hazards.

Ultimately, this Court's decision here may not prove deeply troublesome. When a district court is presented with a fees request, and when the "relatedness question" is at all close, the district court may find it prudent to calculate fees in the alternative, using both of the *Hensley* routes. It can (1) sever the losing claims and correspondingly limit any later downward adjustment for the partial character of success, *and* (2) treat the claims as an aggregate, making the entire adjustment for incomplete success in a single operation—the "second" inquiry mandated by *Hensley.* The Seventh Circuit has observed that there will be "situations that might straddle the two types of [*Hensley*] reduction[s]," *Nanetti v. University of Illinois at Chicago,* 944 F.2d 1416, 1420 (7th Cir.1991), and has said that for such straddling cases it makes no difference which route the district judge takes so long as he does not subject the winning party to "a double reduction". *Id.* "Applied to the case before us, therefore, *Hensley* ... offered the district court two options. It could find the time spent unsuccessfully researching and arguing the fees for tenure distinct from time spent on the salary issue—and therefore count none of the former toward the lodestar—or it could find the two fees claims interrelated, but nevertheless reduce the lodestar due to its view of the plaintiff's ultimate success in achieving redress." *Id.*

Because of this decision and *Brooks,* the two methods will not exactly be "options" for district courts in this circuit; if the district court pursues one route it will run the risk that the reviewing panel will find the case on the other side of the *Brooks/Goos* divide.

Thus the prudent (though time-consuming) course will be to take *both* routes. The crux, as *Hensley* repeatedly noted, is that there be an adequate downward adjustment for misspent effort. See, e.g., 461 U.S. at 436, 103 S.Ct. at 1941 ("[a]gain, the most critical factor is the degree of success obtained"), at 440, 103 S.Ct. at 1943 (reduced fee appropriate if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole"), at *id.* ("the district court should award only that amount of fees that is reasonable in relation to the results obtained"). Later cases confirm *Hensley*'s prescription of reductions for incomplete success. See, e.g., *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 569, 121 L.Ed.2d 494 (1992) ("the most critical factor in determining the reasonableness of a fee award is the degree of success obtained") (plurality opinion) (internal quotations omitted); *Texas Teachers Ass'n v. Garland School Dist.,* 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989) ("the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley* ") (unanimous opinion); *City of Riverside v. Rivera,* 477 U.S. 561, 585, 106 S.Ct. 2686, 2699, 91 L.Ed.2d 466 (1986) ("Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought") (Powell, J., concurring in judgment). The downward adjustment seems especially appropriate in a case such as the present one, where plaintiff not only lost on the contract claim but evidently never—in the view expressed by plaintiff's counsel at oral argument—had anything to gain from raising it in the first place.[1]

---

1. At oral argument, the following colloquies occurred:

[The Court]: [I]f she [Ms. Goos] had succeeded in both claims based upon the common fact situation ... would she have gotten substantially more damages?

[Appellant's Counsel]: Oh, that's a good point. The breach of contract claim would have produced potentially less damages than the D.C. Human Rights Act claim.

[The Court]: But let's say that you hadn't lost the breach of promise and that somehow the judge had said this is two things: it is both a D.C. Human Rights violation *and* it is a breach of the manual. Would the measure of damages, namely, what is eligible to be counted as damages, have been any different?

[Appellant's Counsel]: Absolutely not—because the breach of contract damages would overall be less than the D.C. Human Rights Act damages.

\* \* \* \* \* \*

[Appellant's Counsel]: If we had proceeded just on breach of contract and had won that, the potential damages were less than available under the D.C. Human Rights Act.

Accordingly, if district courts pursue the dual strategy and the calculations come out identically, that will only serve to underscore the fundamentally seamless character of the inquiry. If the calculations come out differently, the district court's less preferred view will serve as a back-up that the court of appeals may substitute if it finds error in the formal severance decision.

\* \* \* \* \* \*

In *Nanetti* the Seventh Circuit authorized the district court, in any case that "straddled" the approaches outlined by *Hensley*, to choose either method so long as he does not "exact[ ] a double reduction for what amounts to the same reason". 944 F.2d at 1421. That device seems eminently sensible. Because the record leaves some uncertainty about *Nanetti*'s caveat, i.e., about whether such a "double reduction" may have occurred, I join the judgment to the extent that it seeks clarification on that point. Insofar as the court adopts a formalistic and impermeable barrier between the two modes sketched by *Hensley*, I dissent.

[The Court]: But, what I am saying is, what if you had done both?

[Appellant's Counsel]: If we had done both, the damages would have been no different. No different.

[The Court]: That's why I keep asking, what did the contract claim potentially add to the force of your lawsuit?

[Appellant's Counsel]: I'm hard put right now to say anything differently. Honestly.

[The Court]: Did you suffer, did you have any potential fear that you could lose the Human Rights—was there any likelihood you could have lost the Human Rights but won on the contract?

[Appellant's Counsel]: I guess it's possible, but all along the Human Rights Act claim was the predominant claim. Look at all of the pleadings. Look at the way the judge treated it below—look at [the way] the judge treated it below. The way opposing counsel treated it below. We all regarded it as the predominant claim in the case.